(172 App. Div. 569)

### WARD et al. v. UNION TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    May 12, 1916.)

1. REFORMATION OF INSTRUMENTS ⌾⟶16—GROUNDS.

  In the absence of evidence of mistake or fraud, a lease will not be reformed because it may work a hardship.

  [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 68; Dec. Dig. ⌾⟶16.]

2. CONTRACTS ⌾⟶167—CONSTRUCTION—EXISTING LAW.

  Where parties enter into a contract, they are presumed to have in mind all existing laws relating thereto, or to the subject-matter thereof, which enter into the contract and define and determine it.

  [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 750; Dec. Dig. ⌾⟶167.]

3. CONTRACTS ⌾⟶167—PERFORMANCE—WHAT LAW GOVERNS.

  As the law of a contract forms its obligations, the contract is fulfilled and its obligations discharged by complying with whatever its existing law requires.

  [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 750; Dec. Dig. ⌾⟶167.]

4. LANDLORD AND TENANT ⌾⟶148(2)—LEASE—COVENANT AS TO TAXES—CONSTRUCTION.

  Where a covenant in a lease for the term of five years required the tenant to pay all annual taxes, and subsequently by Laws 1911, c. 455, §§ 911, 914, the Tax Law was changed to make taxes payable in March, instead of September, resulting in the imposition of six annual levies of taxes within the period of the lease, as the parties will be presumed to have had in mind the existing law when making the contract, the obligation of the covenant was satisfied by the payment of five annual taxes assessed during the term.

  [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 521; Dec. Dig. ⌾⟶148(2).]

5. APPEAL AND ERROR ⌾⟶1097(1)—REVIEW—SUBSEQUENT APPEALS—FORMER DECISION AS LAW OF THE CASE.

  In considering a judgment after trial of the issues, the court is not concluded by the language used in an opinion upon a former appeal in the case, in which the pleadings were discussed upon the theory advanced by counsel upon a motion for a separate trial of the issues.

  [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358, 4359, 4363, 4427; Dec. Dig. ⌾⟶1097(1).]

  Scott, J., dissenting.

Appeal from Special Term, New York County.

Action by J. Langdon Ward and others, as trustees, against the Union Trust Company of New York. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

See, also, 166 App. Div. 762, 152 N. Y. Supp. 237.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

Henry W. Hayden, of New York City, for appellants.
Perry D. Trafford, of New York City, for respondent.

PAGE, J. The facts material to this appeal are as follows:

The plaintiffs by two prior leases had let the premises to the Plaza Bank for terms of ten and six years, respectively, each of which con-

---

⌾⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tained a clause requiring the tenants to pay taxes similar to the one contained in the lease in suit, by virtue of which the annual taxes imposed upon the premises for the years from 1893 to 1908, inclusive, were paid by the tenant. On the expiration of the second of these leases, the Plaza Bank, as tenant, entered into possession of the premises under a lease with the plaintiffs for a term of five years, commencing on the 1st day of May, 1909, at noon, and ending on the 1st day of May, 1914, at noon, at a rent therein reserved, payable as therein provided, which lease contained a covenant which, so far as material to the present controversy, read as follows:

"Provided always, and the lessee hereby covenants to pay said rent punctually, and to pay and discharge all annual taxes as shall during said term be imposed on said premises hereby demised, as soon as they become due and payable, * * * and to keep said demised premises free, clear, discharged, and unincumbered from all such taxes * * * during said term. * * *"

In pursuance of said covenants, the taxes for the years 1909, 1910, and 1911 were paid by said Plaza Bank. On December 22, 1911, the Plaza Bank merged under the Banking Law with the Union Trust Company of New York, the defendant herein, which continued in possession under said lease until May 1, 1914, at noon, and paid the rent thereunder, and also paid the taxes for the years 1912 and 1913. Thus during the five-year term of the lease five annual taxes were paid by the tenant.

On the assessment rolls for the year 1914 there appeared a tax amounting to $10,235 against the premises. The assessment rolls of the city of New York for the year 1914 were delivered to the receiver of taxes of the city of New York by the president of the board of aldermen of said city on the 27th day of March, 1914, together with the warrant for the collection of the taxes therein specified, signed by the said president and countersigned by the city clerk. The defendant refused to pay any part of the taxes for the year 1914, and after such refusal the plaintiff paid the first half of the said taxes on the 3d day of June, 1914, and the second half on the 25th day of November, 1914, and has brought this action for the amount thereof, with interest.

At the time the lease in suit was executed, and for 50 or more years prior thereto, the assessment rolls of the city of New York had been delivered to the receiver of taxes of said city, and the warrant for the collection of the taxes therein specified, on or about the 15th day of September, and were payable on the first Monday of October in each year. This continued to be the method of levying and collecting the annual taxes until the year 1912. In 1911 (Laws 1911, c. 455) the several sections of the Greater New York Charter (Laws 1901, c. 466) were amended, so that the assessment rolls were required to be delivered to the receiver of taxes, together with the warrant for the collection thereof, on or before the 28th day of March (section 911), and it was further provided (section 914) that:

"One half of all taxes upon real estate shall be due and payable on the first day of May, and the remaining and final one half of taxes on real estate shall be due and payable on the first day of November. All taxes shall be and become liens on the real estate affected thereby on the respective days

when they become due and payable, * * * and shall remain such liens until paid."

The appellants contend that the taxes for the year 1914 were imposed on these premises on the 27th day of March, 1914, and, as that was during the term of the lease, the tenant, under and by virtue of the covenant hereinbefore set forth, was bound to pay and discharge the taxes for that year. The respondent contends that for the five-year term of the lease it has paid five annual taxes, which fulfills the terms of the lease according to the intent of the parties, and that it would be a hardship on the tenant to require it to pay six years' taxes, and asked the Special Term, if it should hold otherwise, to reform the lease.

[1] There is no ground for a reformation of the lease. There was no mistake or fraud that led to the incorporation of this covenant in the lease. A similar covenant had been in the prior leases between these parties and had been performed for 16 years without question. Nor can we change the agreement made by the parties because it may work a hardship. The questions to be determined are: What was the intent of the parties at the time the agreement was made? and what is the effect upon the contract of the subsequent enactment by the Legislature of laws that substantially change the time of the assessment of taxes?

[2, 3] There can be no question as to the intention of the parties at the time the lease was executed, and that was that the annual tax for each year of the term was to be paid by the tenant. This tax had been assessed and was payable in the fall of each year. Under the first two leases, during the 16 years of their terms, 16 annual taxes had been paid by the tenant, and it was the expectation of both parties that during the 5 years of the lease, in the instant case, that 5 annual taxes would be assessed in September and paid in October of each year. Neither party to the lease had any reason to anticipate that the law in regard to the time of assessment and payment of taxes in this city, which had been fixed for more than 50 years, would be changed within the terms of the lease. When parties enter into a contract, they are presumed to have in mind all the existing laws relating thereto or to the subject-matter thereof. Those laws enter into the contract and define and determine it. "The law of the contract forms its obligation; and if so, the contract is fulfilled, and its obligations discharged, by complying with whatever the existing law required." Ogden v. Saunders, 12 Wheat. 257, 302 (6 L. Ed. 606). It is because the existing laws enter into and become part of the contract and form its obligation that it has been held that these laws cannot be changed by any state, so that the obligation of the contract is impaired, under the prohibition of the federal Constitution. Const. U. S. art. 1, § 10. See Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793, and cases cited. "One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not, by the Constitution, to be impaired. * * * This is not a question of degree, manner, or cause, but of encroaching in any respect on its obligation. * * *" Planters' Bank v. Sharp, 6 How. 301, 327 (12 L. Ed. 447).

Of course I do not mean to say that these cases have any bearing upon the change in the Tax Law of the state as affecting the validity of that statute, but merely to show how conclusively it has been held that the laws existing at the time of the contract enter into and become a part of the contract, and fix and define its obligations. It seems to me the rule of law governing this case was correctly stated by Lord Chief Baron Pollock in Mayor, etc., of Berwick v. Oswald, 3 El. & El. 653, 678:

"I think that every contract (which does not expressly provide to the contrary) must be made with reference to the existing state of the law, and if by the intervention of the legislature a change is made in the law, which in any degree affects the contract, such contract, made without some clear and distinct reference to the prospect or possibility of a change, does not hold with reference to the state of things as altered by the new law. I am not aware there is any authority which expressly decides this; but also I am not aware there is any authority to the contrary, and I think the intervention of the legislature in altering the situation of contracting parties in principle is analogous to a convulsion of nature, against which parties may provide, but, if they have not provided, it would generally be considered as excepted out of the contract."

While this is stated in a dissenting opinion, the majority opinion held that the language used in the contract contemplated the probability of the subsequent change in the law (and that construction was upheld on appeal, 5 H. L. Cases, 856); hence the principle announced by Chief Baron Pollock was not controverted. Endlich cites it as an authority for his statement of the law to the same effect (Interpretation of Statutes, § 461), and it is cited with approval by the Supreme Court of Michigan (Fuller v. Kane, 110 Mich. 549, 550, 68 N. W. 267 [34 L. R. A. 308, 64 Am. St. Rep. 362]) in a case where, under a covenant in a mortgage "to pay * * * all such taxes and assessments as shall by any lawful authority, while the money secured by these presents remains unpaid, be levied and imposed upon said premises," it was sought to compel the mortgagor to pay a tax authorized by subsequent legislation to be assessed against the mortgagee's interest.

Chief Justice Jeremiah S. Black speaks of the interference of the Legislature, after the making of a contract, as an unforeseen accident, against which equity will relieve the parties. Hampton v. Commonwealth, 19 Pa. 329, 334. While the effect of the amendment of the laws subsequent to the making of the contract does not seem to have been considered in any reported decision in this state, the case of Herald Square Realty Co. v. Saks Co., 215 N. Y. 427, 109 N. E. 545, is closely analogous. In that case the covenant in the lease provided that the tenant should "comply at its own expense with all orders, notices, * * * or requirements of any municipal, state, or other authority or department." At the time of the execution of the lease it had long been the common practice of the authorities to sanction and permit projections of parts of buildings upon the streets; but such authorities, after the making of the lease, decided that the display windows on the ground floor of the building were encroachments upon the street and directed their removal. The landlord made the changes

required and sued the tenant to recover the expense. In reversing the judgment for the landlord, the court said:

"It is not to be assumed, therefore, that the comprehensive phrases of the lease, all of which were quite germane and appropriate to existing conditions, were intended to apply to future events not then in contemplation. The lease bears evidence on its face of having been carefully drawn by skilled counsel; but it contains no intrinsic indications that it was intended to cover radical changes in the building laws of the future. Had it been the purpose of the parties to guard against the extraordinary contingency that some later municipal administration might require the removal of such structural encroachments as show windows, they could easily have expressed that important consideration in terms too definite to be misunderstood." 215 N. Y. 431, 109 N. E. 546.

And again:

"The language of this lease, construed in the light of contemporaneous regulations, usages, and customs, seems to require the conclusion that it was not the purpose of the parties to subject the tenant to an expense caused wholly by extraordinary and unforeseen building alterations made necessary by a subsequent and radical change in the policy of the municipal government; and we are brought to this conclusion despite the forceful argument of counsel for the plaintiff, in which he contends that the expense of complying with the order of the borough president, directing the removal of the show windows, comes within the very letter of the lease. We think that this extraordinary expense was not in the contemplation of the parties when this lease was made." (215 N. Y. 432, 109 N. E. 546).

[4] If the removal of a structure, the maintenance of which was contrary to existing law, was not within the covenant, because of the long-continued custom and usage of the municipal authorities to permit such structures, and a possibility of a change of their custom was not within the contemplation, certainly a change by amendment to the existing law, advancing the date for the payment of taxes, could not be within the covenant in the instant case. In my opinion, therefore, the obligation of the covenant in the lease was satisfied by the tenant paying the five annual taxes assessed during the term, and the tax for the sixth year, by reason of the change in the time of assessing the taxes made by the Legislature subsequent to the making of the lease, did not impose an additional burden upon the tenant.

In the case of Ayer v. Bonwit, 161 App. Div. 122, 146 N. Y. Supp. 301, a similar result was reached, but the reason given for the decision was based upon language in the lease materially different from that in the instant case. The case of Ogden v. Getty, 100 App. Div. 430, 91 N. Y. Supp. 664, is clearly distinguishable from the case at bar. In that case there was no question of a change of law, but merely the enforcement of a covenant in accordance with the law as it existed at the time of the entering into the lease, which was the same at its termination.

[5] We are not concluded by the language used in the opinion upon a former appeal in this case. 166 App. Div. 762, 152 N. Y. Supp. 237. We were there discussing the pleadings on the theory advanced by counsel upon a motion for a separate trial of issues. We are now considering a judgment after a trial of the issue, and, with all the facts before us, applying the law as we understand it, although counsel have not presented the theory which we have applied.

For the reasons given, the judgment should be affirmed, with costs. Order filed.

CLARKE, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur.

SCOTT, J. (dissenting). While I concede that the question involved in this appeal is a close and doubtful one, which is not precisely covered by any authority to which our attention has been called, I am disposed to think that under the terms of the lease the tenant should pay the half of the annual taxes for 1914, which by virtue of the amendment of the New York City Charter (Laws 1911, c. 455) became payable on May 1, 1914. The defendant's lease ran until noon on said May 1, and the tax became payable on May 1, 1914; that is, on the first hour of that day. So the one-half of the annual tax became payable before the expiration of the lease. The lessee's covenant was not to pay all the taxes which might be imposed during the term of the lease, as was the covenant considered in Ogden v. Getty, 100 App. Div. 430, 91 N. Y. Supp. 664, but to pay so much of the tax imposed during the term as should become payable within the term. The precise agreement was that the lessee would pay all annual taxes which should be imposed during the term "as soon as they became due and payable." The payment of one-half the tax for the year, therefore, fell within the letter of the covenant.

Of course it is entirely probable that, when the lease was made, neither the lessors nor the lessee anticipated that any change would be made in the law providing for the payment of the annual taxes; but they should have known that such a change was within the power of the Legislature, and might occur, and they took no means to meet the contingency. It is also entirely probable that the lessee expected to be called upon to pay only five years' taxes for a five-year term; but, on the other hand, the lessors expected to receive their property back at the end of the term unincumbered by a tax lien and provided in plain language that they should so receive it.

I agree that no case has been made for a reformation of the lease, and without a reformation it seems to require payment by the defendant of one-half of the tax for 1914, with interest.