FINGER LAKES RACING ASSOCIATION, INC., Plaintiff, v NEW YORK STATE RACING AND WAGERING BOARD, Defendant. (Action No. 1.)

FINGER LAKES RACING ASSOCIATION, INC., et al., Respondents, v WESTERN REGIONAL OFF-TRACK BETTING CORP., Appellant, and NEW YORK STATE RACING AND WAGERING BOARD et al., Intervenors-Appellants. (Action No. 2.)

Fourth Department, July 12, 1977

*Taylor & Taylor (Daniel R. Taylor* of counsel), for Finger Lakes Racing Association.

*John J. Gannon* for Western Regional Off-Track Betting Corporation, appellant.

*Louis J. Lefkowitz, Attorney-General (William J. Kogan, Ruth Kessler Toch* and *John Dailey* of counsel), for New York State Racing and Wagering Board, intervenor-appellant.

*Morris & Morris (Stephen Morris* of counsel), for Genesee Monroe Racing Association, intervenor-appellant.

*Jesse Moss* and *Sue Wimmershoff-Caplan* for Western New York Harness Horsemen's Association and others, intervenors-appellants.

DILLON, J. These two interrelated actions involve the rules and regulations of the New York State Racing and Wagering Board (Board), as proposed and as subsequently adopted, and the distribution of off-track pari-mutuel betting moneys to Finger Lakes Racing Association, Inc. (Finger Lakes). An action was commenced by Finger Lakes in 1975 for an accounting and to collect moneys due from the Western Regional Off-Track Betting Corporation (WROTBC) for the year 1974 in accordance with the distribution tables of section 125 of the Off-Track Pari-Mutuel Betting Law (L 1926, ch 440, as amd by L 1973, ch 346, § 4).

The second action, brought in December, 1976, is a controversy submitted upon agreed facts pursuant to CPLR 3222 in which plaintiffs, Finger Lakes Racing Association, Inc. (Finger Lakes) and Finger Lakes Division of the H.B.P.A., seek a determination that certain rules and regulations adopted by the defendant New York State Racing and Wagering Board (Board) conflict with sections 121 and 125 of the Off-Track Pari-Mutuel Betting Law.

### DISTRIBUTION OF 1974 OFF-TRACK BETTING MONEYS

Prior to 1970 legalized pari-mutuel wagering on horse races was restricted to the confines of licensed thoroughbred and harness horse racetracks in New York State. In that year off-track betting was legalized by the New York State Legislature and in 1973 the Legislature established seven horse racing regions in the State and created regional off-track betting corporations to accept and disburse the proceeds of off-track wagering. The defendant WROTBC is such a corporation and serves the Western region of the State. Subject to limitations set forth in section 121 of the Off-Track Pari-Mutuel Betting Law, WROTBC accepts both regular wagers and exotic wagers (§ 117, subd 2), placed on thoroughbred and harness horse races conducted in and outside of the State. The percentage of those wagers retained by WROTBC is designated "the retained commission" (§ 125, subd 1) from which, after the payment of enumerated costs and expenses, distribution is

made in accordance with a prescribed schedule (§ 125) to the various racing associations or corporations operating race-tracks.

Finger Lakes is located in Ontario County and although it is thus within the Western Region (§ 117, subd 1, par [8]), it is also within a special betting district which geographically overlaps portions of the Western, Central and Catskill regions (§ 121, subd 5). The existence of the special betting district prohibits all off-track betting establishments located within its borders from taking bets on nonprofit racing association (NYRA) races[1] while Finger Lakes[2] is conducting a meeting. This restriction on betting within the district protects Finger Lakes from the loss of betting dollars which otherwise may have been placed on such races. The off-track betting establishments in the Western region outside of the special betting district, however, are authorized to accept wagers on NYRA races even though Finger Lakes is conducting a meeting.

Although WROTBC has fully paid Finger Lakes its share of bets made on Finger Lakes races in 1974, Finger Lakes claims in this action that it has not received its share of 1974 bets made with WROTBC on such out-region races. It asserts that there is money due and owing from WROTBC as the result of bets made in the following categories:

1. Regular bets placed on NYRA races during Finger Lakes' 1974 racing meeting.

2. Exotic bets placed on NYRA races during Finger Lakes' 1974 racing meeting.

3. Regular bets placed in the special district on NYRA races while neither Finger Lakes nor Batavia Downs was conducting 1974 racing meetings.

4. Exotic bets placed in the special district on NYRA races while neither Finger Lakes nor Batavia Downs was conducting 1974 racing meetings.

5. Regular bets placed on out-of-State races while Finger Lakes was conducting its 1974 racing meeting.

Defendants appeal from Special Term's order which grants Finger Lakes summary judgment and directs that WROTBC

1. The only "nonprofit racing association" in the State is the New York Racing Association (NYRA). It operates one thoroughbred racetrack in the Mid-Hudson region, one in the Nassau region and one in the Capital District region.

2. Finger Lakes is the only thoroughbred "racing association" in the State and it operates the remaining thoroughbred racetrack in New York.

pay to Finger Lakes: 1.25% of the regular bets and 2.25% of the exotic bets it received on races run outside of the Western region by nonprofit racing associations during the 1974 Finger Lakes meeting: .70% of the regular bets and 1.30% of the exotic bets it received from within the special betting district on races run by nonprofit racing associations outside of the Western region when Finger Lakes was not conducting a meeting; and 3.50% of the regular bets it received from within the special betting district on out-of-State thoroughbred races during the Finger Lakes 1974 meeting.

Shortly before the commencement of this action the State Racing and Wagering Board (Board), the agency created to issue rules and regulations to accomplish the purposes of the off-track pari-mutuel laws (§ 118), announced proposed rules for the distribution of moneys under section 125. The Board contends that Special Term should have adopted its interpretation of section 125 unless it was found to be unreasonable. The rules were subject to change, however, and did not become effective until April 30, 1976. Thus the Board erroneously seeks to invoke an identical standard of judicial review for proposed rules as is applied to rules which have been formally adopted and promulgated (cf. *Matter of Cowen v Reavy,* 283 NY 232). While the proposed rules bear careful consideration, they do not carry the force and effect of law (cf. *Darweger v Staats,* 267 NY 290), and thus Special Term properly examined the relevant statutes in order to ascertain the intent of the Legislature.

The defendants also erroneously contend that plaintiffs have failed to exhaust their administrative remedies. Cases cited by the defendants as purported authority for this argument *(Slater v Gallman,* 38 NY2d 1; *Merante v Burns,* 47 AD2d 671) are inapposite in that they involved proceedings where administrative review was specifically authorized by statute or contract (see *YMCA v Pure Waters Dist.,* 37 NY2d 371). Here there is no similar authority for administrative recourse to resolve disagreements concerning the amount of money to which a track is entitled.

The first substantive issue to be addressed on this appeal is whether Finger Lakes is entitled to a share of the 1974 Western region regular and exotic bets placed on NYRA races while Finger Lakes was conducting a meeting. We hold that it is not.

While Finger Lakes does not question the right of WROTBC

to accept bets outside the special betting district on NYRA races run during Finger Lakes' race meetings, it does assert that it is a Western "regional track" within the meaning of section 125 for purposes of receiving a share of the retained commissions resulting from such bets. The Board contends, however, that Finger Lakes is a "regional track" only within the special betting district and therefore does not share in the pools resulting from bets placed outside the special betting district on out-district races.[3]

The tables set forth in paragraphs (a) and (b) of subdivision 1 of section 125 allocate varying shares to the tracks holding the races on which the bets are placed, and to the regional tracks, depending upon the type of association or corporation conducting the meeting. Paragraph (c) of subdivision 1 of section 125 deals with the distribution of shares resulting from bets placed within the special betting district when Finger Lakes is not conducting a meeting, and makes Finger Lakes eligible to receive a share of off-track betting dollars derived not only from that portion of the Western region, but similarly from those portions of the Central and Catskill regions which are within the special betting district. Thus, it is evident that the special betting district has meaning for purposes of distribution of dollars within the district when Finger Lakes is closed as well as for restricting off-track betting within its confines.

The gravamen of this controversy is whether section 125 is intended to provide for the distribution to Finger Lakes of a share of Western region bets placed outside of the district on out-region races when Finger Lakes is open. We thus must decide whether in this context Finger Lakes has status as a regional track in light of the creation of the special district. We conclude that it does not.

Support for that view is found in the legislative judgment which allows bets on NYRA races to be accepted in the Western region outside the special district while Finger Lakes is open. That such off-track bets are permitted in the out-district areas of the Western region represents a legislative determination that Finger Lakes is not thereby deprived of betting dollars which it otherwise would have received.

---

3. Paragraph (c) of subdivision 1 of section 125 clearly provides that Finger Lakes is a "regional track" of the Catskill, Central and Western regions, but only to the extent of sharing in each region's distribution of bets placed in the portions of those regions which constitute the special betting district.

A contrary view would result in the distribution of moneys to Finger Lakes at the expense of the two Western regional harness tracks[4] which are damaged by the diversion of off-track dollars to out-region thoroughbred tracks. Indeed, the protection afforded to tracks by limitations on off-track betting (§ 121) and by the distribution to regional tracks of bets made on out-region races (§ 125) reflects a legislative intent to rectify the economic damage to racetracks which is caused by the diversion of dollars which would have gone to the regional track in the form of admission fees and on-track betting (see generally Report of the Governor's Commission on the Future of Horse Racing in New York State, March 1973).

Our departure from Special Term's analysis of the distribution tables (§ 125, subd 1, pars [a] and [b]) and its finding that Finger Lakes is a Western "regional" track, takes into account the existence of the special betting district and the legislative reason for its creation. Absent the creation of the special betting district, bets could not be placed anywhere within the Western region on NYRA races while Finger Lakes was conducting a meeting. Thus, to the detriment of the two Western regional harness tracks, no pool would be created from which distribution of retained commissions could be made pursuant to the appropriate categories of paragraphs (a) and (b) of subdivision 1 of section 125.

Accordingly, since Finger Lakes suffers no damage by virtue of out-district Western region off-track betting, it should not take a share of such betting dollars, particularly in the absence of a clear legislative directive. This conclusion is further buttressed by the fact that the special betting district overlaps portions of three regions, and Finger Lakes, unlike purely regional racing associations or corporations, is permitted, in certain circumstances, to share in pools of off-track bets placed with more than one regional off-track betting corporation (§ 125, subd 1, par [c]). In establishing a special betting district with particular application to Finger Lakes, the Legislature afforded district rather than regional protection to Finger Lakes (§ 121, subd 5).

We conclude, then, that Special Term erred in directing that Finger Lakes receive a share in the retained commissions from regular and exotic bets placed in the Western region

4. Buffalo Raceway and Batavia Downs.

outside of the special betting district on NYRA races run while Finger Lakes was conducting a racing meeting.

We proceed next to a consideration of those parts of Special Term's order which direct distribution to Finger Lakes of shares of both regular bets and exotic bets placed within the special betting district of the Western region on NYRA races run while Finger Lakes was not conducting a meeting.

Disposition of the retained commissions from betting pools derived from such wagering is governed by paragraph (c) of subdivision 1 of section 125 which, to the extent relevant, provides as follows:

"(c) For the portions of the Catskill, Central and Western regions included within a special betting district, when no thoroughbred race meeting is conducted by a racing association or corporation located within such special district, the distribution of the retained commission to 'regional tracks' by such regional corporation derived from wagers placed within such special betting district shall be divided as follows:

"(i) when a harness corporation located in such *district* is conducting a meet the full amount to such harness corporation; and

"(ii) when no racing is being conducted, in the case of the affected portions of the Catskill and Central regions, fifty per centum to the thoroughbred racing association or corporation and fifty per cent to the harness track located within such region, and, in the case of the affected portion of the Western region, forty per cent to the thoroughbred racing association or corporation and the balance divided equally between the harness racing corporations located in such region." (Emphasis added.)

Finger Lakes, the only thoroughbred racetrack located within the special districts, did not conduct a racing meeting between December 3 and December 31, 1974. Batavia Downs, while situate in the Western region, is the only harness corporation located within the special district and it was not conducting a meeting during the period when Finger Lakes was closed. In such circumstances, Special Term applied the literal meaning of the statute and directed that Finger Lakes share in the retained commissions from such wagers pursuant to subdivision 1 (par [c], cl [ii]) of section 125.

The Board contends that the word "district" as used in subdivision 1 (par [c], cl [i]) of section 125 is a legislative error

and that the statutory scheme requires that the word "region" be interpreted in its stead. It is urged that because Buffalo Raceway, the other Western region harness corporation, was conducting a meeting between December 3 and December 31, 1974, inclusive, it is entitled to the "full amount" of the retained commission, to the exclusion of Finger Lakes.

It is settled law that where the wording of a statute is ambiguous, it may be necessary for the courts to interpret the statute so as to determine the intent of the Legislature. When words have a definite and precise meaning, however, "courts should not go elsewhere in search of conjecture so as to restrict or extend that meaning" (*Matter of Erie County Agric. Soc. v Cluchey,* 40 NY2d 194, citing *McCluskey v Cromwell,* 11 NY 593, 601; *City of Buffalo v Lawley,* 6 AD2d 66, 68). Ordinarily, then, we would reject the gross change of statutory language suggested by the Board, with the observation that such an amendment is properly a matter for legislative, rather than judicial, attention.

The Legislature is presumed to mean what it says and a statute must generally be construed according to its plain terms. In the absence of clear necessity, words should not be read into a statute (*Matter of Palmer v Spaulding,* 299 NY 368). It is settled law, however, that "[i]n the construction of statutory provisions, the legislative intent is the great and controlling principle" (*Matter of Albano v Kirby,* 36 NY2d 526, 529-530). While such intent is first found in the words of the statute, the courts must look to the "spirit and purpose" of the statute or rule under scrutiny (*id.,* pp 530-531). "It is a fundamental rule of statutory construction that a statute or legislative act is to be construed as a whole, and that all parts of an act are to be read and construed together to determine the legislative intent * * *. Statutory language, however strong, must yield to what appears to be intention and that is to be found not in the words of a particular section alone but by comparing it with other parts or provisions of the general scheme of which it is part" (McKinney's Cons Laws of NY, Book 1, Statutes, § 97, pp 211, 213).

Thus, in determining whether there is merit to the Board's argument, we may look not only to the purpose which the New York State Off-Track Pari-Mutuel Betting Law is designed to achieve, but also to the language of the entire act. It is only if the use of a word is at variance with the other unambiguous language of the law and clearly stands out as a

mistake, unintended by the enactors, that we will interpret it in order to achieve harmony and eliminate ambiguity.

It cannot logically be argued that Batavia Downs and Buffalo Raceway in the Western region; Vernon Downs in the Central region; and Monticello Raceway in the Catskill region[5] are not "regional tracks" within the statutory scheme of the Off-Track Pari-Mutuel Betting Law (L 1973, ch 346, § 4). As previously stated (supra), the enactment of limitations on off-track betting (§ 121), and the provisions for the distribution to regional tracks of shares of the retained commission from bets made on out-region races (§ 125), represent a legislative intention to protect regional tracks from the economic damage which they suffer by the diversion of betting dollars.

The special betting district (§ 121, subd 5) was created exclusively for the protection of Finger Lakes, the only thoroughbred racetrack located in the district. It is nowhere found in the legislative history of this law nor in any other of its provisions, an intention to afford any protection or special benefit to Batavia Downs by virtue of the creation of the special district.

A finding that the use of the word "district" in subdivision 1 (par [c], cl [i]) of section 125 was not in error, but by design, would give Batavia Downs, a regional track, a special status as a district track, to the detriment not only of Buffalo Raceway but also of Vernon Downs and Monticello Raceway. Though it is clear from the whole law that the statutory purpose was to protect regional tracks with respect to off-track bets placed within the region while such regional track was conducting a meeting, a literal interpretation of the clause under review occasions a clear variance from that legislative concept. We thus conclude that the word "district" was mistakenly included in clause (i) of paragraph (c) in subdivision 1 of section 125, and that it was the intention of the Legislature to provide that when Finger Lakes is not conducting a racing meeting, and when a harness corporation located in the Western region is conducting a meeting, such harness corporation shall receive the full amount of the distribution of the retained commissions derived by the Western region corporation from wagers placed within the special betting district.

Since Buffalo Raceway was conducting a meeting between

---

5. In 1976 the portion of the Catskill region (Chemung County) which was overlapped by the special betting district was removed from the district.

December 3 and December 31, 1974, it is entitled to the full amount of the retained commission, to the exclusion of Finger Lakes.

The parts of the order of Special Term which direct that Finger Lakes receive .70% (40% of 1.75%) of regular bets and 1.30% (40% of 3.25%) of exotic bets placed within the special betting district on NYRA races must be reversed. Finger Lakes is entitled to such awards only when it, Batavia Downs and Buffalo Raceway are not conducting meetings (§ 125, subd 1, pars [a], [b] and [c], cl [ii]).

Finally, no issue is raised concerning the share to be paid to Finger Lakes with respect to bets placed on out-of-State thoroughbred races within the special betting district, and we agree with Special Term's determination that Finger Lakes is entitled to 3.50% of the retained commission on such pools, less any contractual obligation owed to the out-of-State track operator, or to another State (§ 125, subd 1, pars [a] and [d], cl [iii]).

Special Term's ordering paragraph numbered "5" should be affirmed, but the order should otherwise be reversed, and the complaint dismissed.

### SUBMISSION OF CONTROVERSY

In this action, plaintiffs contend that certain of the rules and regulations adopted by the New York State Racing and Wagering Board are unreasonable in that they conflict with sections of the Off-Track Pari-Mutuel Betting Law (§§ 121, 125; L 1973, ch 346, § 4). The rules and regulations are entitled "Distribution of Tracks' Percentages Of Off-Track Betting Pools" and became effective on April 30, 1976 (9 NYCRR 5211.1 *et seq.*).

While plaintiffs contest the validity of a large number of the rules, it is only necessary, in order to resolve the dispute, to discuss portions of the "Definitions" section (9 NYCRR 5211.1 [i] and [t]) and the rule designating Finger Lakes as a "regional track" solely within the special betting district (9 NYCRR 5211.3 [g]). Plaintiffs' claim as to the invalidity of the other rules is premised upon the repetitive use and application of the defined terms and of such "regional track" designation.

Subdivisions (i) and (t) of section 5211.1 of the Official

Compilation of Codes, Rules and Regulations of the State of New York provide as follows:

"(i) *Dark or dark day.* A day upon which no racing is being conducted at a track. For purposes of this Part, a meeting is deemed not in progress at such track on such day."

"(t) *Open.* A day upon which racing is being conducted at a track; a meeting is in progress at such track on such day."

The Board is vested with broad powers over all pari-mutuel betting activities, both on-track and off-track, in the State, and over all persons, corporations or associations engaged therein (Pari-Mutuel Revenue Law, § 1-a [L 1973, ch 346, § 2]; Off-Track Pari-Mutuel Betting Law, §§ 116, 118, 120 [L 1973, ch 346, § 4]; see, also, *Matter of Sullivan County Harness v Glasser,* 30 NY2d 269; *Sullivan County Harness Racing Assn. v City of Schenectady Off-Track Betting Comm.* (76 Misc 2d 558, affd 47 AD2d 780, lv to app den 36 NY2d 647). It is required to issue rules and regulations "in order to ensure the accomplishment of the purposes" of the Off-Track Pari-Mutuel Betting Law (§ 118). Such purposes are stated in section 116 of the Off-Track Pari-Mutuel Betting Law as being:

"to derive from such betting, as authorized by this article, a reasonable revenue for the support of government, and to prevent and curb unlawful bookmaking and illegal wagering on horse races. It is also the intention of this article to ensure that off-track betting is conducted in a manner compatible with the well being of the horse racing and breeding industries in this state, which industries are and should continue to be major sources of revenue to state and local government and sources of employment for thousands of state residents."

Plaintiffs contend that the Board's definitions of the terms "dark or dark day" and "open" are unreasonable because they conflict with the industry's accepted meaning of the term "race meeting". They also assert that it was the legislative intent in using the words "meet", "meeting" and "race meeting" in the subject law to refer to certain periods of time, with the understanding that racing is not necessarily conducted on each day during such period. It is argued that the implementation of these contested definitions will result in a diversion of betting dollars which otherwise would be wagered in the form of on-track pari-mutuel betting.

The construction given statutes- and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld *(Matter of Albano v Kirby,*

36 NY2d 526, 532). Here, neither the term "race meeting" nor any similar term has been defined by the Legislature. While statutory construction is the function of the courts, its power to review an agency determination is limited. Where the agency administering the statute has determined the question of the specific application of a broad statutory term, such determination is to be accepted by the courts if it has warrant in the record and a reasonable basis in law (*Matter of Howard v Wyman*, 28 NY2d 434, 438). "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body" (*Matter of Howard v Wyman, supra*, p 438, quoting *Rochester Tel. Corp. v United States*, 307 US 125, 146; see, also, *Matter of Barie v Lavine*, 40 NY2d 565 and *Grossman v Baumgartner*, 17 NY2d 345).

The Board convincingly asserts that the contested definitions are designed to accommodate the purposes of the Off-Track Betting Law as set forth in section 116. They are calculated to enhance the revenues of State and local governments and will minimize unlawful bookmaking. Moreover, the Board asserts, they will benefit the State's horse racing and breeding industries in providing additional income to racetracks to aid in their operation and to pay purses to horsemen, and to provide "breakage" payments to breeding funds for the purpose of encouraging and subsidizing racehorse breeding in this State. We find the subject rules to be reasonable as being consistent with the relevant statutes, particularly in light of the Board's legislatively conferred power over both on-track and off-track pari-mutuel betting.

Since we have already found (*supra*) from our analysis of the Off-Track Betting Law that the legislative purpose in creating the special betting district was for the protection and benefit of Finger Lakes, we again conclude that Finger Lakes is a "regional track" only in those counties comprising the special betting district. Our consideration herein of that law was made in relation to Board rules which, in the context of the issue there presented, were merely proposed, not adopted. We now determine that 9 NYCRR 5211.3 (g) also is reasonable as being consistent with the legislative scheme.

We thus affirm the validity of each of the contested rules and judgment should be entered accordingly.

MARSH, P. J., CARDAMONE, GOLDMAN and WITMER, JJ., concur.

Judgment in Action No. 1 unanimously entered in favor of defendant, without costs, in accordance with opinion by DILLON, J.

Order in Action No. 2 unanimously modified in accordance with opinion by DILLON, J., and, as modified, affirmed, without costs.