OPINION OF THE COURT
Fuchsberg, J.
In a case of first impression, we are called upon to construe section 19-a of the Civil Rights Law, legislation designed to outlaw specified discrimination in the sale of cooperative real estate ownership interests. At issue at this stage of the case is whether the defendant Joanne Winship, sued herein as Mrs. Frederick M. Winship, who with her husband occupies a Manhattan cooperative apartment of which Mr. Winship is the “cooperative shareholder”, is herself a “cooperative tenant” within the compass of the statute. Mr. Winship is also president and a director of 417 Park Avenue Corporation, the cooperative entity which bears the address of and owns the building in which the Winship apartment is located.
The statute, as relevant here, reads as follows:
“§ 19-a. Prohibition against unreasonable withholding of consent.
“1. No corporation formed for the purpose of the cooperative ownership of real estate within the state shall withhold its consent to the sale or proposed sale of certificates of stock or other evidence of ownership of an interest in such corporation because of the race, creed, national origin, or sex of the purchaser.
“2. For the purpose of this section a ‘corporation’ shall include the cooperative management, cooperative tenants, cooperative shareholders, or any appointee or successor in interest of a corporation.”*
The plaintiffs, Martin Sanders and Erika Sanders, husband and wife, bring this suit for compensatory and punitive damages against the corporation, the Winships and the other corporate directors. As set out in some detail in *394 their pleadings, Mr. and Mrs. Sanders, American citizens of Jewish persuasion who formerly resided in Israel, after contracting with a cooperative stockholder for the purchase of an apartment in the building in question as a residence for their children and themselves, as was stipulated in the contract and required by the corporation, submitted to a personal interview at the Winship apartment, where they were interrogated by Mr. and Mrs. Winship and four others identified as members of the board.
The papers go on to assert that, during the course of this meeting, the Winships, directly and indirectly, made repeated references, “derogatory and demeaning in both content and tone”, to plaintiffs’ religion and to their Israeli background. Shortly thereafter, though all information required for demonstrating the purchaser’s financial ability and good character had been furnished, Mr. Sanders was informed, without reason, that consent to the proposed purchase was denied. Plaintiffs’ complaint concludes with the charge that, among other things, this rejection was grounded on plaintiffs’ creed, was induced at least in part by Mrs. Winship (who, it is claimed, is, in terms of section 19-a, a “cooperative tenant”) and was consistent with “a continual course of conduct of defendant corporation, defendant board members' and defendant Mrs. Winship over a period of many years of invidious discrimination against members of the Jewish faith and other minorities”.
The procedural posture in which the case is here arises from a CPLR 3211 motion made on behalf of Mrs. Winship to dismiss the complaint against her for failure to state a cause of action, most particularly on the legal argument that she was not a “cooperative tenant”. Whatever an ultimate trial may disclose as to the truth of the allegations, on such a motion, a court is to take them as true and resolve all inferences which reasonably flow therefrom in favor of the pleader. On this basis, Special Term, of the view that, since Mrs. Winship “occupies the premises with her husband and has a possessory right, whether by license or otherwise, to do so”, she was a cooperative tenant, proceeded to deny her motion. Nevertheless, the Appellate Division, in a brief memorandum, reversed, on the law, *395 and dismissed the complaint against her. For the reasons which follow, we agree with the result reached by Special Term.
Our analysis may well start with the obvious fact that the statute, expressive of fundamental State policy (see, e.g., NY Const, art I, § 11) and expressly purposed to combat the specific discrimination quoted above, is to be regarded as remedial in nature and, therefore, liberally construed (McKinney’s Cons Laws of NY, Book 1, Statutes, § 341; cf. Executive Law, § 300; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 183). Nor are we to assume that, in framing such a statute, the Legislature did not act with a consciousness that antidiscrimination edicts all too commonly are circumvented unless they are comprehensive in their application (see Matter of Axel v Duffy-Mott Co., 47 NY2d 1, 6; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra; State Div. of Human Rights v Kilian Mfg. Corp., 35 NY2d 201, 209-210).
Reading the statute in this light, we observe initially that, though it begins by forbidding only the cooperative corporation itself from discriminatorily withholding consent (subd 1), it goes on to provide an expansive series of definitions of “corporations” to include not only the “cooperative management” through which it acts, which would not be exceptional, but also such categories as “cooperative tenants” and “cooperative stockholders”, each of whom normally play no formal managerial, decisional or policy role.
As we have seen, subdivision 1 of section 19-a commands that a cooperative corporation not “withhold its consent” for the proscribed discriminations. Indeed, the withholding of such consent is the prohibition the statute institutes. Since subdivision 2 then goes on to include cooperative tenants and cooperative stockholders within its special definitions of “corporation”, in a literal sense cooperative tenants and stockholders are forbidden to withhold consent. But this produces a paradox, for how can such a tenant who, strictly speaking, has no consent to give, be able to effectively withhold consent? The answer lies within the embrace of the further construction principle that a statute is to be viewed as a whole. To this end, all *396 parts thereof, if possible, are to be harmonized to achieve the legislative purpose (see People v Mobil Oil Corp., 48 NY2d 192; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 97, 98,130). Or, as Chancellor Kent long ago put it more pointedly, “In the exposition of a statute, the intention of the lawmaker will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter” (Kent’s Comm [13th ed], p 462). In fine, a cooperative tenant is prohibited from conduct which may help bring about an interdicted withholding.
Moreover, since the “primary interest of every stockholder in a co-operative housing corporation is a long-term, proprietary lease” (19 NY Jur 2d, Condominiums, § 51; see Matter of State Tax Comm. v Shor, 43 NY2d 151, 154), it would not be reasonable to assume that the inclusion of “cooperative tenants” as a category distinct from that of “cooperative stockholders” in such a particularized statute was a mere redundancy. The more is this so since it is still another rule of statutory construction that “effect and meaning must, if possible, be given to the entire statute and every part and word thereof” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 98; Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 58 AD2d 285, 293, mod on other grounds 45 NY2d 471). Clearly then, “cooperative tenant” must intend something else than “cooperative stockholder”.
In determining who falls within the umbrella of the separate “cooperative tenant” category, it would be expected that such individuals, though not stockholders, would meet a realistic and recognizable, if not a technical, definition of tenant. The goal of the statute in mind, such persons should also be ones in a position to exert a legitimate influence on the policies or practices of the cooperative, perhaps somewhat akin to that of those in the companion category of stockholder. Suffice it unto the purposes of this case to say that one who dwells in unity in a cooperative apartment with his or her tenant stockholder spouse (who, after all, in a strict sense, has no managerial control either) is such a cooperative tenant.
In the marital situation, it needs no great sociological insight to know that, as a practical matter, the home is a *397 common vital concern, in the management of which quite often a significant influence is exerted by one other than its titular owner. Indeed, actual or inchoate rights related to the support of a spouse, to which a home is central, have run through our law from the days when dower dawned (see 1 Coke, Commentary on Littleton, p 30; 2 Blackstone’s Commentaries, p 130) to the contemporary coverage of New York’s Equitable Distribution Law (see, e.g., Domestic Relations Law, § 236, part B, subd c, par [3]; Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Domestic Relations Law, § 236, 1981 Supp, p 33). So, too, the term tenant at times denotes one who possesses property only in a broad sense (e.g., Kavanaugh v Cohoes Power & Light Corp., 114 Misc 590) and, surely in the vernacular, has long and universally included “occupant”, “inhabitant” and “dweller” (Webster’s New World Dictionary, Encyclopedic Edition [1951]; Webster’s International Dictionary [2d ed, unabridged] [1961]; Random House Dictionary of the English Language [1966]; Funk & Wagnalls, A Standard Dictionary of the English Language [1895]).
It follows that a spouse who, though but a “cooperative tenant”, most often will share the feelings of the spouse is the “cooperative stockholder” and thus will have a legitimate interest in influencing the actions of the elected officials or hired professionals who wield authority on behalf of the cooperative. And, that influence, representative of the opinions of those who ultimately will be affected by the decisions, as plaintiff alleges, was manifested by Mrs. Winship, when she not only actively displayed her displeasure but seized the opportunity to do so either by invitation or acquiescence of her husband and other directors. If so proved, it could be found to have been a participating or contributing cause of the withholding of consent.
Therefore, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and defendant Mrs. Frederick M. Winship’s motion to dismiss the complaint denied.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
*398 Order reversed, with costs, and respondent’s motion to dismiss the complaint denied.

 Section 19-b of the Civil Rights Law provides that a person aggrieved by defiance of section 19-a may seek equitable relief and damages.