OPINION OF THE COURT
Susan R. Larabee, J.
The respondent has moved this court, by order to show cause signed May 23, 1996, to dismiss this petition to extend his restrictive placement in that he is now 18 years old[1] and he is not consenting to any extension. For the reasons set out below, the respondent’s motion is denied.
The respondent first appeared in Bronx Family Court in December 1992, pursuant to a removal of this matter from Bronx Criminal Court. The petition alleged that the respondent committed one designated class A felony act[2] 3and three designated felony acts[3] as well as three nondesignated felonies. After a lengthy fact-finding hearing, this court found beyond a reasonable doubt, that respondent committed each crime charged.[4]
After a lengthy dispositional hearing, this court placed the respondent pursuant to Family Court Act § 353.5 (4) for the maximum five-year period with no credit for his time spent in detention. An 18-month minimum secure confinement followed by a 12-month stay in a residential facility was ordered. The respondent was also ordered to complete 200 hours of community service. The Division for Youth was directed to *867 complete a full sex-offender evaluation for this respondent and to follow up with appropriate group and individual counseling. The respondent was also to receive an appropriate educational plan together with vocational training.
The respondent appealed to the Appellate Division, which affirmed the Family Court on all but the kidnapping finding. (Matter of Luis V., 216 AD2d 15 [1st Dept 1995].) Upon remittitur, this court entered a new three-year restrictive placement dispositional order in conformity with the Appellate Division’s order. This is significant because the kidnapping finding, a designated class A felony, is the only designated felony finding which rendered the respondent eligible for a five-, rather than a three-year placement. The court placed the respondent for the maximum three years permitted, effective April 27, 1993, with a 12-month minimum period in a secure confinement to be followed by a six-month stay in a residential facility.[5] On February 14, 1996, the Division for Youth filed the instant petition to extend the respondent’s placement.[6]
The hearing as to the need for an extension of placement commenced on May 8, 1996 and continued on May 14, 1996 and May 23, 1996, and was then adjourned until June 5, 1996. Respondent brought the instant motion before the court via an order to show cause signed by this court on May 23, 1996. Citing Family Court Act § 355.3 (6), the Law Guardian reasons that since the respondent is past his 18th birthday, his consent is a condition precedent to any extension of his placement. The Division for Youth opposes the application. Because this appears to be a question of first impression, the court is issuing this written decision.
The respondent was restrictively placed pursuant to section 353.5 (5) of the Family Court Act. Extensions of these placements are governed by section 353.5 (5) (d), which states: "Upon the expiration of the initial period of placement or any extension thereof, the placement may be extended in accordance with section 355.3 upon petition of any party or the division for youth, after a dispositional hearing, for an additional period not to exceed twelve months, but no initial placement or exten *868 sion of placement under this section may continue beyond the respondent’s twenty-first birthday.” (Emphasis added.) Section 355.3 (6) deals with extension of placements generally and has a different provision for extensions of placement for the period between a respondent’s 18th and 21st birthday. It states: "Successive extensions of placement under this section may be granted, but no placement may be made or continued beyond the respondent’s eighteenth birthday without the child’s consent and in no event past the child’s twenty first birthday.” The heart of the Law Guardian’s application is that section 355.3 (6) makes the 18-year-old restrictively placed delinquent’s consent a condition precedent to any extension of his restrictive placement, as it is with nonrestrictive placements for either misdemeanors or felonies, nondesignated or nonrestrictive placements for designated felonies.
When interpreting a statute, it is the court’s obligation to determine and then implement the Legislature’s intent when the statute was passed. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92.) In the first instance, the court is to look to the language of the statute itself. Where the language of the statute is clear and unambiguous, the court’s inquiry must end. Where, however, the language of the statute is not so clear or is ambiguous, as is the case here, the court may turn to extrinsic materials in order to ascertain the Legislature’s intent. (Id., § 92 [b].)[7]
Amongst those extrinsic sources to which the court may turn to for guidance are the legislative history of the statute, and the social situation at the time the statute was enacted. When engaging in statutory construction, the statute must be read as a whole (id., § 97), and all parts of the statute must be harmonized if in conflict and given effect. (Id., § 98.) The court must interpret a statute in order to avoid certain objectionable consequences (id., § 141 et seq.). Amongst these objectionable consequences are absurdity (id., § 145), the sacrifice of public interests (id., § 152), and ineffectiveness. (Id., § 144.)
With these principles in mind, the court turns to the question at hand, namely, how is the reference to Family Court Act § 355.3 contained within section 353.5 (5) (d) to be construed. *869 Section 353.3 of the Family Court Act was originally enacted as part of the Juvenile Justice Reform Act. (L 1976, ch 878.) In this original enactment a complete framework was created within the Family Court Act for the prosecution and rehabilitation of juvenile delinquents. Within the statute, the Legislature recognized a serious class of delinquent acts, referred to as "designated felony acts”. A subclassification of "designated class A felony acts” was created as well. Laws of 1976 (ch 878, § 16) created the restrictive placement as a disposition separate and apart from the placement which already existed for the more common delinquents. In creating what was then section 753-a of the Family Court Act, the Legislature included a separate provision governing extensions of placement. In what was originally codified as section 753-a (4) (d), the Legislature stated that the placement may be extended every 12 months until the respondent’s 21st birthday.[8] Upon signing this enactment into law, Governor Carey wrote: "The total period of placement may be extended until the child reaches the age of 21.” (Governor’s Mem approving L 1976, ch 878, 1976 McKinney’s Session Laws of NY, at 2452.)
Chapter 878 was passed in response to an outbreak of violent juvenile crime during the early 1970’s. The Governor appointed a Panel on Juvenile Violence which recommended the passage of what became the Juvenile Justice Reform Act. The designated felony framework was created as an alternative to the inclusion of the violent juveniles in the adult criminal justice system.[9] As part of the purposes of the juvenile delinquency system, the courts were, for the first time, explicitly directed to consider the protection of the community as one of the goals of any juvenile delinquency proceeding.[10]
*870 In 1982, the Legislature separated the juvenile delinquency provisions out of article 7 and created a new article 3 for the Family Court Act solely for juvenile delinquency. When corrected, the provisions dealing with extension of placement in restrictive placements contained the reference to section 355.3 that is found in the current statute. The question now to be answered as to this recodification is simply put: Did the Legislature intend to substantially change the restrictive placement so as to make it into an ordinary placement once the initial placement period expired?
As enacted, article 3 gives the court a number of dispositional alternatives after a finding that a respondent committed a designated felony act, including two forms of placement. A delinquent may be placed into a restrictive placement under section 353.5 or the delinquent may be placed into a nonrestrictive placement under section 353.3. Among the striking differences between these two sections, in addition to the length of the original placement period, is the difference in what happens at the expiration of the initial placement. The restrictive placement section has a separate provision covering extensions of placement, and that provision contains no language whatsoever placing the ultimate decision as to extending placement with the restrictively placed designated felon. Section 353.3 contains no provision whatsoever concerning extensions of placement, and any authority therefore, together with procedures for such extensions come solely from section 355.3.
Where two contradictory sections of a statute purportedly govern a situation, and one section is specific to the situation while the other is a general statute, the language of the specific statutory section must be controlling. "It is a well established principle in the construction of statutes that, whenever there is a general and a particular provision in the same statute, the general does not overrule the particular but applies only where the particular enactment is inapplicable. The particular provision * * * is considered * * * an exception to the general where the two are incompatible, and so far as the particular intention is applicable, the general intention yields * * * This doctrine is analogous to the principle that a general law will not usually repeal by implication a special law.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 238, at 404-406 [emphasis added].) Clearly then, the restrictive placement extension provision controls where the general extension provision has conflicting language. To hold otherwise would lead to the absurd and dangerous result of allowing the most violent of ju *871 venile delinquents to circumvent the more lengthy and confined, yet rehabilitative, nature of the restrictive placement. To construe this statute in the manner suggested by the Law Guardian, and seemingly adopted by the commentators to the statute,[11] would render the extension provisions of the restrictive placement virtually meaningless. Such a construction would render the extension of placement provision illusory in the case of the youngster restrictively placed for an initial three-year period just after his 15th birthday. The rehabilitative goal of the restrictive placement would be defeated in the cases where an 18-year-old designated felon could prevent the completion of any necessary services simply by withholding his consent to an extension of placement. Additionally, in the case of a nonrestrictively placed youngster, at least one extension request would not be subject to the respondent’s absolute veto. It is unimaginable that the Legislature would give more control to the most predatory respondents than to lesser delinquents. The statute clearly recognizes the need for an easing-in period, from confinement to residential facility and then to the community, which also would be defeated. If the restrictively placed designated felon is permitted to veto any extension of placement, the easing in process would be defeated where the youngster is still held in confinement at the end of his initial placement period. This court is unwilling to believe that our Legislature would have done through a hidden tunnel that which it never would have done in the light of day.
Accordingly, this court holds that the specific language concerning extensions of placement contained within section 353.5 (5) (d) control over contradictory language in the general extension provisions of section 355.3. The reference to section 355.3 was intended to supply the procedural framework of the extension proceeding a framework which was absent from section 353.5 (5) (d). Thus, the motion to dismiss this proceeding is denied.

. Respondent’s birthdate is December 9, 1977.

. Kidnapping in the first degree as defined by section 135.25 (2) (a) of the Penal Law.

. Rape in the first degree as defined in Penal Law § 130.35 (1), sodomy in the first degree as defined in Penal Law § 130.50 (1), and aggravated sexual abuse as defined in Penal Law § 130.70.

. This court specifically found that the respondent, over a three-day period from November 28, 1992 and lasting until November 30, 1992 held the complainant, against her will, first in his home and then in the home of his aunt. While at his home, he forced the complainant, the 14-year-old mother of his child, to perform oral sex upon him after beating her. He then tore her clothes off of her and forced her to engage in anal sex. The respondent proceeded to beat the complainant with a broomstick on her legs and body, kicked her and punched her causing injuries for which she eventually sought treatment. The next day the respondent forced the complainant to accompany him to his aunt’s home, where he forcibly inserted the handle of a toilet brush into her vagina. He then proceeded to force the complainant to have sexual intercourse with him. Throughout this period, the respondent held a knife to the complainant’s throat. Just two months prior to these events, the respondent was placed on probation for assaulting this same complainant.

. The Appellate Division remittitur was dated June 28, 1995 and the new order was entered on October 6, 1995. The "new” three-year placement would expire on April 27, 1996, some six months later.

. It is important to note that the respondent has spent his entire place-' ment in the Harlem Valley Secure Center. The Division for Youth did not exercise its option to release him from secure confinement at the end of either minimum period.

. "Where * * * after a reading of the statute, its meaning is still not clear, courts must search for legislative intent in the purpose of the enactment, and from such facts and through such rules as may, in connection with the language, legitimately, reveal it * * * All available aids to statutory construction should be explored in determining the meaning and intendment of statutes”. (Id., at 183-184 [citations omitted].)

. Upon expiration of the initial placement or any extension thereof, the placement may be extended, on motion of any party, the Division for Youth or the court, after a dispositional hearing, for an additional period of 12 months, but no initial placement or extension of placement under this section may continue beyond the respondent’s 21st birthday.

. In 1978, the Legislature amended the Criminal Procedure Law to permit certain juvenile offenders to be tried and sentenced in the adult criminal justice system to indeterminate terms of imprisonment. (L 1978, ch 481.) The same statute also provided for the removal of certain matters in which a juvenile was charged with a crime from the adult system to the Family Court as designated felony act petitions. The instant matter initially came into Family Court as such a removal.

. "In any juvenile delinquency proceeding under this article, the court shall consider the needs and best interests of the respondent as well as the need for protection of the community.” (L 1976, ch 878, § 2 [emphasis added].)

. See, e.g., Sobie, Practice Commentary (McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 353.5, at 551; § 355.3, at 575); Besharov, Practice Commentaries (op. cit., Family Ct Act § 353.5, 1996 Pocket Part, at 222); Besharov, Supplementary Practice Commentaries (op. cit., Family Ct Act § 355.3, 1996 Pocket Part, at 229); 47 NY Jur 2d, Domestic Relations, §§ 1489-1490; Kerschensteiner, 1 Family Court Law and Practice in New York § 9:54 (rev ed 1984, 1995 Supp). Interestingly, none of these commentaries cite to any case law or any principle of statutory construction for the interpretation of these provisions.