[740 NYS2d 80]

In the Matter of JUDE F., Appellant. STATE OF NEW YORK OFFICE OF CHILDREN AND FAMILY SERVICES, Nonparty Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent.

Second Department, March 18, 2002

**APPEARANCES OF COUNSEL**

*Eliot Spitzer, Attorney General,* New York City (*Michael S. Belohlavek* and *Thomas B. Litsky* of counsel), for nonparty appellant.

*Charles J. Hynes, District Attorney,* Brooklyn (*Leonard Joblove, Anthea H. Bruffee* and *Amy Appelbaum* of counsel), for respondent.

### OPINION OF THE COURT

Krausman, J.

On this appeal we are asked to determine whether the Family Court may place a juvenile delinquent in the custody of the State of New York Office of Children and Family Services (hereinafter OCFS), without his or her consent, after the juvenile has reached the age of 18. For the reasons which follow, we find that placement is an available dispositional alternative for a youth who has turned 18 during the pendency of a delinquency proceeding, and that the Family Court did not exceed its statutory authority by placing Jude F. in OCFS custody without his consent.

On May 26, 1998, Jude F. and four other youths robbed and assaulted a 13-year-old girl. Jude was arrested immediately after the incident, and charged in Kings County Criminal Court with 11 offenses, including robbery in the first degree, assault in the second degree, and grand larceny in the fourth degree. On the date of the offense, Jude, who was born on January 4, 1983, was 15 years old.

On July 22, 1998, Jude's case was removed to the Family Court pursuant to CPL 725.05, and he was charged with hav-

ing committed acts which, if committed by an adult, would have constituted various crimes, including robbery in the first degree. About six weeks later, on September 2, 1998, Jude entered an admission to robbery in the third degree, and a dispositional hearing was ordered. At the conclusion of the dispositional hearing on September 11, 1998, the Family Court placed Jude on probation for a period of 18 months. As a condition of probation, Jude was required to attend school regularly and to report to his probation officer.

On March 8, 2000, just three days before Jude's probation was scheduled to expire, the Department of Probation filed a petition alleging that he had violated probation by failing to attend school regularly, and by failing to report to his probation officer on four occasions. By this time, Jude was 17 years old. At the conclusion of a hearing on March 20, 2000, the Family Court found that Jude had violated the terms of his probation.

Between March 20, 2000, and January 9, 2001, the proceeding was adjourned several times to explore dispositional options for Jude. During this period, the Department of Probation contacted a number of group homes and residential facilities to inquire as to whether they would be willing to accept Jude in their programs, but none of these facilities agreed to do so.

Meanwhile, when Jude failed to appear in court on November 2, 2000, a warrant for his arrest was issued. This warrant was vacated when Jude returned to court on November 28, 2000. On that date, the Family Court ordered the Probation Department to update its investigation and report, and remanded Jude to a group home operated by St. Christopher Ottilie. However, Jude absconded from the group home on December 10, 2000, and a second warrant for his arrest was issued by the Family Court the following day. This warrant was vacated when Jude returned to court on January 8, 2001, and the matter was adjourned to the following day for disposition.

When Jude appeared for the dispositional proceeding on January 9, 2001, the Family Court Judge indicated that she intended to place him in the custody of OCFS. A court liaison representing OCFS then objected to the proposed disposition on the ground that Jude had turned 18 five days earlier, thus depriving the Family Court of the authority to order placement. The agency's position that a youth could not be involuntarily placed after his or her eighteenth birthday is predicated upon Family Court Act § 355.3 (6), which provides that "[s]uccessive extensions of placement * * * may be granted, but no place-

ment may be made or continued beyond the [child's] eighteenth birthday without the child's consent." The Family Court rejected the agency's argument, noting that while the statute barred it from extending placement beyond a child's eighteenth birthday without his consent, it did "not speak to the issue of initial placement." The Family Court then ordered Jude placed in the custody of OCFS for a period of 18 months.

OCFS now appeals, contending that the Family Court exceeded its statutory authority by placing Jude in its custody. Although Jude also appealed from the January 9, 2001, dispositional order placing him in OCFS custody, and a related order remanding him to secure detention pending further proceedings, he has not perfected his appeals from these orders.

We begin our analysis of whether placement was a permissible dispositional alternative for Jude by briefly considering the goals of the juvenile justice system and the role of OCFS in effectuating these goals. "Historically, the purpose of the juvenile justice system has been to rehabilitate children through supervision, treatment, or placement with specialized juvenile programs" (Besharov and Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 301.1, at 13). This historic function is reflected in Family Court Act § 301.1, which declares that in any juvenile delinquency proceeding, the court "shall consider the needs and best interest of the [child] as well as the need for protection of the community." OCFS, formerly known as the State of New York Division for Youth, plays an important role in carrying out the statutory scheme of rehabilitating children. The agency was created by Executive Law article 19-G, which sets forth its "overall mandate to prevent delinquency through positive youth development and at the same time provide care and treatment in an appropriate custodial setting" (Mem of State Exec Dept, 1992 McKinney's Session Laws of NY, at 2613). The agency maintains three levels of facilities for youths placed in its custody—secure, limited secure, and nonsecure (see, Family Ct Act § 353.3). With regard to age limitations for the placement of children in the agency's custody, Executive Law § 507-a (2) (a) provides:

> "Consistent with other provisions of law, only those youth who have reached the age of seven but who have not yet reached the age of twenty-one may be placed in, committed to or remain in the division's custody. Whenever it shall appear to the satisfaction of the division that any youth placed therewith

> is not of proper age to be so placed or is not properly placed, or is mentally or physically incapable of being materially benefitted by the program of the division, the division shall cause the return of such youth to the county from which placement was made."

Thus, unless otherwise prohibited by the Family Court Act, Executive Law § 507-a (2) (a) permits a youth to be placed in OCFS custody until the age of 21.

Turning now to the issue of whether the Family Court Act contains any provision which limits the Family Court's ability to place a juvenile in OCFS custody once he or she has reached the age of 18, it is significant to note that Family Court Act § 302.2 permits a juvenile delinquency proceeding to be commenced up until the juvenile's eighteenth birthday. It is therefore inevitable that in some delinquency proceedings commenced shortly before a youth's eighteenth birthday, the Family Court will be faced with the issue of determining an appropriate disposition after the youth has turned 18. With respect to the dispositional alternative of placement, Family Court Act § 353.3 authorizes the Family Court to place a juvenile in the custody of a suitable relative or private person, or with OCFS pursuant to Executive Law article 19-G. However, Family Court Act § 353.3 does not contain an age restriction for placement. Thus, the only provision in the Family Court Act which might be read as limiting the court's ability to place a juvenile in OCFS custody once he or she has reached the age of 18 is Family Court Act § 355.3, which is entitled "[e]xtension of placement." Family Court Act § 355.3 permits agencies to petition the court for an extension of placement, and allows the court, after a hearing, to extend placement for up to one year if it determines that continued placement is consistent with the need for the protection of the community, and reasonable efforts were undertaken to make it possible for the juvenile to return to his or her home. Family Court Act § 355.3 (6) further provides that: "Successive extensions of placement under this section may be granted, but no placement may be made or continued beyond the respondent's eighteenth birthday without the child's consent and in no event past the child's twenty-first birthday."

On appeal, OCFS argues that Family Court Act § 355.3 (6) applies both to a juvenile's initial placement with the agency, and to successive placements. In support of this position, the agency focuses on the second part of the sentence, which states

that *"no placement may be made* or continued beyond the respondent's eighteenth birthday" (emphasis supplied). OCFS submits that this clear and unambiguous language demonstrates that no involuntary placement may be made after a child turns 18, regardless of whether it is an initial placement or an extension of placement.

We reject OCFS's interpretation of Family Court Act § 355.3 (6). It is a settled principle of statutory construction that a statute must be viewed as a whole, and that "all parts thereof, if possible, are to be harmonized to achieve the legislative purpose" (*Sanders v Winship*, 57 NY2d 391, 395-396; McKinney's Cons Laws of NY, Book 1, Statutes §§ 97, 98, 130). Here, although subdivision (6) contains the phrase *"no placement may be made,"* it is part of a provision which deals exclusively with extensions of placement. When the single sentence which comprises subdivision (6) is read in its entirety and in context, it is clear that the phrase "but no placement may be made or continued beyond the respondent's eighteenth birthday" refers to the "successive extensions of placement" which may be granted pursuant to Family Court Act § 355.3. Indeed, we note that Family Court Act § 355.3 (6) has been interpreted to afford an 18-year-old juvenile veto power only over extensions of placement subsequent to a first extension (*see, Matter of Luis V.,* 169 Misc 2d 865, 871).

Furthermore, to accept OCFS's argument would be to unduly limit the Family Court's dispositional options for older teens who have violated probation and are in need of a more structured environment. Family Court Act § 360.3 (6) provides that where the court, after a hearing, revokes an order of probation or conditional discharge, "it shall order a *different* disposition pursuant to section 352.2" (emphasis supplied). Five dispositional options are available under Family Court Act § 352.2: conditional discharge, probation, placement in accordance with Family Court Act § 353.3, restrictive placement for juveniles who have committed designated felonies, and placement based on mental illness or retardation. Since Jude was already on probation and Family Court Act § 360.3 (6) requires a "different" disposition for a juvenile who has violated probation, probation was not a dispositional option available to the court. Two of the other alternatives, restrictive placement and placement based on mental illness or retardation, did not apply to Jude. Thus, the only dispositional alternatives actually available to the Family Court in this situation were conditional discharge or placement. If we were to accept

OCFS's position that involuntary placement is not permitted, we would be limiting the Family Court to granting conditional discharges to 18 year olds in Jude's position, despite the fact that they had already violated probation. This would be a particularly inappropriate disposition in this case, where Jude's failure to appear in court on two occasions contributed toward delaying the dispositional proceeding past his eighteenth birthday. Furthermore, pursuant to OCFS's interpretation of the statute, in any delinquency proceeding in which the juvenile turns 18 prior to the dispositional hearing, the Family Court would be limited to the dispositional alternatives of conditional discharge or probation, unless the juvenile had committed a designated felony for which restrictive placement may be directed up until the age of 21 pursuant to Family Court Act § 353.5 (5) (d). This would seriously undermine the legislative aim of providing appropriate rehabilitative services, including treatment and education, to older youths who have never previously been placed in the custody of OCFS, but who may benefit from a period of placement. In addition, we cannot overlook the fact that the juvenile justice system also serves to protect the community from youths who have committed acts which would constitute criminal offenses if they were adults, and that in some instances, an initial placement of a juvenile who has turned 18 may serve the interest of public safety. For these reasons, we find that Family Court Act § 355.3 (6) does not bar the Family Court from involuntarily placing an 18 year old in the custody of OCFS. Therefore, the appeal by Jude should be dismissed as abandoned, and the amended order of disposition should be affirmed insofar as appealed from by the agency.

SMITH, J.P., S. MILLER and CRANE, JJ., concur.

Ordered that the appeal by Jude F. is dismissed as abandoned, without costs or disbursements, for failure to perfect the same in accordance with the Rules of this Court (see, 22 NYCRR 670.8 [f]); and it is further,

Ordered that the amended order of disposition is affirmed insofar as appealed from by the State of New York Office of Children and Family Services, without costs or disbursements.