■ MARIETTA CORPORATION, Respondent, v THOMAS FAIRHURST et al., Appellants. [754 NYS2d 62] —Peters, J. Appeal from a judgment of the Supreme Court (Rumsey, J.), entered August 26, 2002 in Cortland County, which granted plaintiff's motion for a preliminary injunction.

Plaintiff is a New York corporation with its principal place of business in the City of Cortland, Cortland County, where it employs approximately 450 people; another 300 are employed worldwide. Defendant Pacific Direct, Inc. is also a New York corporation that has its principal domestic office in West Newton, Massachusetts. Pacific Direct, Inc. is a wholly-owned subsidiary of Pacific Direct, Ltd. (hereinafter collectively referred to as Pacific Direct), which has a substantial presence in England, employing approximately 140 employees between England, the United States, the Czech Republic and China. Both companies are suppliers of hotel amenities. Plaintiff supplies basic standard toiletry items in bulk to large hotel chains whereas Pacific Direct focuses primarily on four and five star

---

hotels to provide innovative high-end packaging with branded products.[1]

Defendant Thomas Fairhurst began working for plaintiff in March 1994 as its vice-president in charge of sales. In 1996, he was promoted to senior vice-president for sales and marketing. As a member of the senior management team, he reviewed and strategized sales marketing worldwide and engaged in high-level planning where finance, product development and marketing information was reviewed. His responsibilities further included, inter alia, setting of pricing policies, developing strategic marketing and sales planning on both the national and international level. He monitored competitors, developed contracts with suppliers and had personal knowledge of plaintiff's business plans and costs.

Fairhurst had an employment contract with plaintiff, which expired in October 1999. That contract included a confidentiality provision and an express covenant not to compete, effective for the duration of the time that Fairhurst received payments from plaintiff. Included in such agreement was a recognition that any breach or "threatened breach" of either the confidentiality provision or the restrictive covenant would warrant injunctive relief. Following the expiration of such employment contract, plaintiff presented Fairhurst with a new contract, dated October 11, 1999, which also included a covenant not to compete. Although Fairhurst signed the agreement, he changed the severance payments provision from one to two years to track the duration of the covenant. Plaintiff did not agree with Fairhurst's change in terms and their efforts at negotiation failed. Fairhurst did, however, sign a separate, nondurational confidentiality agreement, which did not contain a restriction on competitive employment or a provision mirroring the prior employment contract concerning plaintiff's entitlement to injunctive relief upon a "threatened breach" of the confidentiality provision. He was terminated from his employment with plaintiff in May 2002.

Fairhurst accepted employment with Pacific Direct on June 19, 2002 as the president of its operations in the United States. His responsibilities included that of a senior salesperson seeking to promote and introduce Pacific Direct's products to the domestic market. Thirty days thereafter, plaintiff commenced this action and also moved for a preliminary injunction to

---

1. For example, plaintiff contracts with large hotel companies such as Intercontinental to supply toiletries for its standard rooms whereas Pacific Direct would contract with that same company to supply specialized items for their luxury suites.

enjoin Fairhurst from working for Pacific Direct and indirectly or directly disclosing plaintiff's trade secrets. Upon the issuance of a temporary restraining order, and following oral argument, Supreme Court granted plaintiff's request, preventing Fairhurst from working for Pacific Direct for 11 months. Both Fairhurst and Pacific Direct appeal.[2]

Preliminary injunctive relief is a drastic remedy which is not routinely granted (see *Peterson v Corbin*, 275 AD2d 35, 37, *lv dismissed* 95 NY2d 919; *Cool Insuring Agency v Rogers*, 125 AD2d 758, 760, *appeal dismissed* 69 NY2d 1037). As a discretionary determination, the court must assess whether the moving party has demonstrated that irreparable harm will occur if the injunction is not granted, that such party has a likelihood of success on the merits, and that the balance of the equities tip in its favor (see *Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862). Upon our review of this record, we conclude that Supreme Court abused its discretion when it granted the preliminary injunction.

Plaintiff contended that Fairhurst had, or would inevitably, use confidential information and trade secrets from plaintiff in carrying out the duties of his new position and that such conduct constituted a misappropriation of trade secrets and breach of the confidentiality agreement. Absolutely no evidence was proffered to support the assertion that Fairhurst had already intentionally disclosed any proprietary information, nor was an anticompetitive employment agreement in effect. Building from the concept of a threatened disclosure of trade secrets, Supreme Court utilized a doctrine, not yet adopted by the state courts, of inevitable disclosure (see *EarthWeb, Inc. v Schlack*, 71 F Supp 2d 299, 309-310; *PSC, Inc. v Reiss*, 111 F Supp 2d 252, 258-259; *International Paper Co. v Suwyn*, 966 F Supp 246, 258-259). It concluded, after finding "no persuasive evidence that Fairhurst has intentionally disclosed any proprietary information he obtained from plaintiff to Pacific Direct, or any of its employees," that plaintiff met the irreparable harm prong necessary for the issuance of a preliminary injunction. Despite the lack of evidence that Fairhurst had actually misappropriated any alleged trade secrets, the court reasoned that since it was extremely likely that he would "use those secrets—if only unconsciously—in carrying out his duties

---

2. After the filing of the notice of appeal on August 26, 2002, defendants moved in this Court for an order, pursuant to CPLR 5518, to modify the preliminary injunction to allow Fairhurst to continue working while the appeal was pending. We granted that motion in a decision and order dated September 13, 2002.

with Pacific Direct, to [plaintiff's] unfair advantage," that plaintiff had established a likelihood of success on its claims of misappropriation and breach of the confidentiality agreement. We find insufficient record evidence to support these findings.

Acknowledging that irreparable harm can be established if a trade secret has been misappropriated, where there is no actual theft of a trade secret, the court, in applying the doctrine of inevitable disclosure, is "asked to bind the employee to an implied-in-fact restrictive covenant" not to compete (*EarthWeb, Inc. v Schlack, supra* at 310). As no restrictive covenant was in existence here and our well entrenched state public policy considerations disfavor such agreements,[3] the doctrine of inevitable disclosure is disfavored as well, "[a]bsent evidence of actual misappropriation by an employee" (*id.* at 310). In those rare instances where such doctrine is applied, it is further cautioned that the proponent should not be permitted to "make an end-run around the [confidentiality] agreement by asserting the doctrine of inevitable disclosure as an independent basis for relief" (*id.* at 311). In assessing whether such injunctive relief is appropriate, the court should consider whether: "(1) the employers * * * are direct competitors providing the same or very similar products or services; (2) the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; * * * (3) the trade secrets at issue are highly valuable to both employers [; * * * and (4)] the nature of the industry and [its] trade secrets" (*id.* at 310; *see PSC, Inc. v Reiss*, 111 F Supp 2d 252, 256-257, *supra*).

Assessing the proof presented here to support the issuance of a preliminary injunction under the theory of inevitable

---

**3.** It has been reasoned that such covenants are severely disfavored due to: " 'powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood.' Indeed, our economy is premised on the competition engendered by the uninhibited flow of services, talent and ideas. Therefore, no restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of his previous employment" (*Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 307, quoting *Purchasing Assoc. v Weitz*, 13 NY2d 267, 272 [internal citation omitted]). The Court of Appeals later cautioned: "After a personal service contract terminates, the availability of equitable relief against the former employee diminishes appreciably. * * * Only if the employee has expressly agreed not to compete with the employer following the term of the contract, or is threatening to disclose trade secrets or commit another tortious act, is injunctive relief generally available at the behest of the employer" (*American Broadcasting Cos. v Wolf*, 52 NY2d 394, 403 [citations omitted]).

.

disclosure, we find a failure in the proffer demonstrating irreparable harm. As there was no actual misappropriation, the showing emanates from the presumption that there will be an inevitable disclosure of trade secrets by Fairhurst since Pacific Direct is in direct competition with plaintiff and he possesses such "highly confidential or technical knowledge concerning manufacturing processes, marketing strategies, or the like" (*EarthWeb, Inc. v Schlack*, 71 F Supp 2d 299, 309, *supra*). While we agree that Fairhurst was privy to confidential information, there exists a valid and enforceable confidentiality agreement which clearly anticipated that he may change his employment during its duration after acquiring plaintiff's confidential information. Upon the record presented, we fail to find any evidence of a breach of such agreement or that the confidential information also constituted a trade secret.

As the Court of Appeals has guided, a trade secret is " 'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it' " (*Ashland Mgt. v Janien*, 82 NY2d 395, 407, quoting Restatement of Torts § 757, Comment *b*). In deciding a trade secret claim, the court must make a factual determination concerning whether the alleged trade secret is truly "secret" by considering: " '(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others' " (*Ashland Mgt. v Janien, supra* at 407, quoting Restatement of Torts § 757, Comment *b*). Plaintiff's proffer consisted of affidavits of both Barry Florescoe, its Chairman of the Board and CEO, and Rick Bloom, its president, which annexed confidential exhibits concerning, inter alia, the corporation's strategic profile, recent product bids and corporate expansion plans. Notably, none of these affidavits or supporting documents asserted that such information was a trade secret which Fairhurst acquired.

Hence, in our view, Supreme Court adopted an overly expansive definition of "trade secret" so as to encompass nearly all confidential business documents; if its focus was on the pricing data and market strategies, such information would not constitute trade secrets (*see e.g. H. Meer Dental Supply Co.*

*v Commisso*, 269 AD2d 662, 664). We find plaintiff's claims to be self-serving, entirely conjectural (*see Cool Insuring Agency v Rogers*, 125 AD2d 758, 760, *supra*) and insufficient to support the theory that Fairhurst had used or threatened to use a "trade secret." Absent any wrongdoing which would constitute a breach under the confidentiality agreement, mere knowledge of the intricacies of a business is simply not enough (*see Catalogue Serv. of Westchester v Henry*, 107 AD2d 783, 784) nor would the solicitation of former customers, unless the customer list itself would be considered a trade secret—a contention not viable in this instance (*see Eastern Bus. Sys. v Specialty Bus. Solutions*, 292 AD2d 336, 338; *see also Arnold K. Davis & Co. v Ludemann*, 160 AD2d 614, 616). With plaintiff failing to establish a likelihood of success on the merits and with the balance of the equities manifestly falling to Fairhurst and Pacific Direct (*see Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 307, 308), we find a clear abuse of discretion in the granting of the motion.

Cardona, P.J., Crew III, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is reversed, on the law, with costs, and motion denied.