■ U.S. RE COMPANIES, INC., et al., Respondents, v JOSEPH M. SCHEERER et al., Appellants. [838 NYS2d 37]—

Order, Supreme Court, New York County (Helen E. Freedman, J.), entered October 2, 2006, which granted plaintiffs' motion for a preliminary injunction, unanimously reversed, on the law, the facts and in the exercise of discretion, with costs, the motion denied, the injunction vacated, and the matter remanded for further proceedings.

From February 2003 to August 2006, defendant Joseph

Scheerer worked as a vice-president for U.S. Re Securities, LLC, one of the three corporate plaintiffs in this action (collectively referred to as U.S. Re).[1] U.S. Re offers brokerage and investment banking services in the reinsurance market. As a condition of his employment, Sheerer signed a confidentiality agreement with U.S. Re. In that agreement he promised not to disclose any of U.S. Re's confidential or proprietary information to third parties without first obtaining written permission. U.S. Re did not require, and Scheerer did not enter into, any noncompetition or nonsolicitation agreements with U.S. Re.

In September 2006, Scheerer left US Re to work for Benfield Advisory Inc.[2] U.S. Re and Benfield are direct competitors in the brokerage and investment banking areas of the reinsurance market. On September 22, 2006, U.S. Re commenced this suit pleading six causes of action against Scheerer and Benfield.[3] The complaint seeks money damages as well as injunctive relief, to preclude defendants from soliciting its clients or using confidential information in breach of Scheerer's confidentiality agreement. Also, plaintiffs allege that Scheerer made false and disparaging comments about U.S. Re to its clients.

On the date it filed its complaint, U.S. Re also moved for a temporary restraining order (TRO) and the preliminary injunction at issue on this appeal. After holding a hearing, the IAS court granted the TRO, immediately enjoining Scheerer from disclosing confidential information in violation of the confidentiality agreement.

In support of U.S. Re's motion for the preliminary injunction, the senior vice-president and CFO of U.S. Re Companies, Inc. submitted an affidavit. He claimed that Scheerer had improperly contacted customers who had open transactions at U.S. Re, and that he had made false and disparaging comments about his former employer. Annexed to this affidavit were: the confidentiality agreement; correspondence between counsel for U.S. Re and Sheerer regarding his obligations to retain U.S. Re's confidences; and correspondence between counsel for Benfield and counsel for U.S. Re.

In opposition to the motion, defendant Benfield submitted a

---

1. Plaintiffs are U.S. Re Companies, U.S. Re Corporation and U.S. Re Securities, LLC.

2. Benfield Advisory Inc., Benfield Holdings Inc., and Benfield Inc. are all named defendants. They are referred to collectively as Benfield.

3. The six causes of action pleaded in the complaint are: (1) declaratory judgment as to the enforceability of the confidentiality agreement; (2) breach of contract; (3) tortious interference with contract; (4) unfair competition; (5) tortious interference with economic advantage; and (6) slander per se.

summary of the facts and a memo of law in support of its position. Counsel argued that U.S. Re's motion was an attempt to prevent open and fair competition. Defendant Scheerer submitted an affidavit in which he denied disclosing any confidential information from U.S. Re, and he denied making any disparaging comments about his former employer. Scheerer stated that he had contacted approximately 100 potential clients while at Benfield, but he had not had contact with most of those companies while at U.S. Re. Further, Scheerer swore that to the extent he contacted clients he had assisted while employed at U.S. Re, he did not disclose confidential information to them, but based his interactions solely upon public information.

A senior vice-president at Benfield also submitted an affidavit in opposition to the motion. He affirmed that there is a small population of companies actively involved in the reinsurance market, and that the clients typically work with different firms on different transactions.

In the order appealed, the IAS court granted plaintiffs their requested injunction. The order begins: "The standards for a preliminary injunction as set forth in CPLR 6301, irreparable harm, likelihood of success on the merits, and inability to be compensated by damages *have not been met here*" (emphasis added). However, it concludes that:

"Defendant Scheerer is enjoined from pursuing any specific deal where U.S. Re has already negotiated and signed a contract for that deal.

"Defendant Scheerer is enjoined from pursuing any specific deal on which he performed extensive research or investigative work while at U.S. Re unless the client specifically initiates a request that he do so in writing and explains its reasons to U.S. Re.

"Defendant Scheerer [must] refrain or continue to refrain from making any disparaging remarks about U.S. Re." Defendants appeal.

A party seeking a preliminary injunction must clearly demonstrate (1) the likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the injunction is not issued; and (3) a balance of the equities in the movant's favor (CPLR 6301; *Doe v Axelrod*, 73 NY2d 748, 750 [1988]). Plaintiffs have not established any of these elements.

Initially, U.S. Re was required to show the likelihood that it could prove that Scheerer had breached the U.S. Re confidentiality agreement while employed by Benfield. However, U.S. Re produced no factual support before the motion court to

substantiate this contention (*see Merrell Benco Agency v Safrin*, 231 AD2d 614 [1996] [failure to show likelihood of success on the merits of claimed breach of nonsolicitation agreement]). U.S. Re claims that it was improper for Sheerer to have contacted four companies with whom he had been working while at U.S. Re. However, there is no evidence that these contacts constituted a breach of the confidentiality agreement. Sheerer's denials that he revealed any of U.S. Re's confidences to any of the companies he contacted are not contradicted. Benfield also notes that there is a limited universe of potential customers in the reinsurance market, and that firms should thus be free to compete for individual transactions with clients. Moreover, Scheerer was not bound by a noncompetition clause. There was no language in the confidentiality agreement which precluded him from attempting to work with former clients in his position at Benfield.

U.S. Re next argues that Scheerer would, in his new job, "inevitably disclose" proprietary information. However, this speculation is not a basis for the imposition of a preliminary injunction. Absent concrete evidence that the employee has actually breached a confidentiality agreement, there is no basis to bind him " 'to an implied-in-fact restrictive covenant' not to compete" (*Marietta Corp. v Fairhurst*, 301 AD2d 734, 737 [2003], quoting *EarthWeb, Inc. v Schlack*, 71 F Supp 2d 299, 310 [SD NY 1999] [former employee's knowledge of the intricacies of a company insufficient to establish breach of confidentiality agreement]). Thus, U.S. Re did not establish either a likelihood of success on the merits of the claimed breach of the confidentiality agreement, or irreparable harm (*Marietta*, 301 AD2d at 738).

Moreover, had there been evidence that Scheerer had breached the confidentiality agreement, his former employer could have brought an action for money damages equal to the value of the transactions lost as a result of the alleged breach. This quantifiable remedy precludes a finding of irreparable harm (*Rick J. Jarvis Assoc. v Stotler*, 216 AD2d 649, 651 [1995]).

Finally, plaintiffs claim that a preliminary injunction is warranted here for the same reasons that one was granted in *U.S. Reins. Corp. v Humphreys* (205 AD2d 187 [1994]). This was another case involving an alleged breach of the same US Re confidentiality agreement. However, *Humphreys* is distinguishable on its facts. In that case, the defendant was part of a team of U.S. Re individuals who worked for nearly four years to develop a "finite risk catastrophe reinsurance" product and a successor product. Both of the products were unique to U.S. Re

and recognized as "trade secrets" of that company within the reinsurance industry. After Humphreys resigned, U.S. Re presented concrete evidence to the court that Humphreys planned to misappropriate its products. These were within the definition of "trade secrets" and were expressly covered under the confidentiality agreement.

Here, unlike the *Humphreys* defendant, Scheerer was not privy to a specific trade secret. While Benfield and U.S. Re had overlapping clients, U.S. Re has not demonstrated that Scheerer shared any protected information with anyone at Benfield. In addition, Scheerer did not sign a contract precluding him from joining a competing firm, and he did not sign a nonsolicitation agreement. Concur—Mazzarelli, J.P., Saxe, Sullivan, McGuire and Kavanagh, JJ.