[849 NYS2d 61]

Satwant K. Dhamoon, Appellant, v 230 Park South Apartments, Inc., Respondent.

First Department, December 27, 2007

### APPEARANCES OF COUNSEL

*Snow Becker Krauss P.C.*, New York City (*Michael Wexelbaum, Kenneth E. Citron* and *Marc J. Luxemburg* of counsel), for appellant.

*Richenthal, Abrams & Moss*, New York City (*Craig Avedisian* and *Arthur Richenthal* of counsel), for respondent.

### OPINION OF THE COURT

CATTERSON, J.

In this dispute between a cooperative board and the owner of several commercial units in the co-op building, the issue raised on appeal is whether adjoining properties owned separately by a wife and husband can be designated by the co-op board a jointly-owned, single unit in order to enforce a certain house rule barring access to the wife's property.

The appellant, Dr. Dhamoon,\* and her husband both hold shares in professional space in a Central Park South Building owned by 230 Park South Apartments, Inc., a cooperative corporation. It is uncontroverted that the appellant owns commercial units 1F, 1G, 2F, and 2G. She has operated her gynecology medical practice in the building since 1978, and has done so as the tenant-shareholder of all four combined apartments since 1988. The appellant exclusively holds four separate stock certificates and four separate proprietary leases to the four units.

It is also uncontroverted that the appellant's husband, Mr. Dhamoon, owns commercial units 1D and 1E. He operates a reproductive endocrinology practice, more commonly known as a fertility clinic. These two units are treated as one combined unit and he holds a single stock certificate and a single proprietary lease for both units. These combined units have street access.

---

\* Dr. Dhamoon was the original plaintiff, and the co-op board, the original defendant. Their positions switched as a result of the order on appeal. In this opinion, for clarity, Dr. Dhamoon is designated the appellant, and the co-op board, the respondent.

At or about the time that the appellant acquired the stock and lease for the last apartment in 1988, the board of directors unanimously adopted a resolution approving, among other things, the permanent, irrevocable and lawful use of the apartments occupied by appellant for professional and commercial purposes in connection with her medical practice, and the combination of units 1F and 1G, with a single entrance door installed at a location accessible through the building's lobby. This was the only entrance from outside the building to the appellant's gynecology practice.

In April 2005, House Rule 2 was revised pursuant to the cooperative's bylaws. Article III, section 8 permits the Board to adopt and amend house rules "as it may deem necessary in [sic] respect to the Building of Corporation for the health, safety and convenience of the Shareholder-Tenants." House Rule 2 provided that "[n]o patient or anyone accompanying a patient of any doctor who has an office in the Building, shall be permitted to sit or wait in the lobby area, public halls, elevator hallways or doorway of the Building for any reason whatsoever." In 2005, the amended rule stated that "[n]o patient. . . or [other] invitee. . . of any doctor, dentist, or medical practitioner who has offices or facilities in the Building, if any, shall be permitted to . . . *wait in or use the lobby area . . . for access to such office*" (emphasis added). This amendment was enacted ostensibly because two security breaches in 2001 allegedly involved persons identified as patients or visitors of the appellant. The board's counsel also wrote to Dr. Dhamoon to direct her to remove two signs pursuant to House Rule 6 which stated that no signs, notices or advertisements "shall be inscribed or exposed on the Building" without board approval.

The appellant's practice is the only medical office that does not have a street entrance, and consequently Dr. Dhamoon is the only shareholder-tenant affected by amended House Rule 2. The co-op determined that the appellant's patients could use the door from the street to her husband's offices in order to enter her medical office. The co-op board relied on the fact that at some time in 1990, a door was installed to connect Dr. Dhamoon's property to the kitchen in her husband's medical offices for the convenience of her staff.

Thus, to enter the appellant's waiting room, a patient would have to enter through her husband's front street entrance, and pass through the waiting area and the exam-room hallway of Mr. Dhamoon's fertility clinic space, turn left and walk through

a kitchen and up a stairway to enter the appellant's staff-office area, before entering the gynecology practice waiting area.

Dr. Dhamoon commenced this action in August 2005 seeking a declaration that House Rules 2 and 6 are invalid, and an injunction prohibiting and enjoining the enforcement of the rules. The co-op board did not file an answer, but in October served verified counterclaims alleging, inter alia, that Dr. Dhamoon was subletting her space in violation of the proprietary lease.

Subsequently, Dr. Dhamoon moved by order to show cause for a preliminary injunction enjoining the co-op board from enforcing the subject house rules, and obtained a temporary restraining order enjoining the respondent from restricting her patients from entering the building lobby. The respondent, by cross motion, sought pre-answer CPLR 3211 (a) dismissal of the complaint on the basis of documentary evidence and for failure to state a cause of action.

In May 2006, the court denied Dr. Dhamoon's motion for a preliminary injunction finding no likelihood of success on the merits. The court found it "crystal clear" from photos in evidence that the spaces comprised a single "integrated office space" (2006 NY Slip Op 30276[U], *5). It also relied on what it termed "prior inconsistent judicial statements" as to the ownership of the spaces (*id*. at *4). The court further granted the respondent's cross motion and dismissed the complaint, severed and continued the respondent's counterclaims and directed the matter to be recaptioned. For the reasons set forth below, we reverse.

The court's decision essentially stands for the novel and legally untenable proposition that merely because parties are married, property held separately becomes property held jointly for the benefit of an independent third party. Thus, the court erred in determining that the six units comprise a single space, and so are jointly owned by the appellant and her husband.

First, there is no evidence whatsoever in the record to suggest that the six units were, or are, jointly owned. Indeed, all of the evidence of record establishes the opposite. The appellant acquired four separate units in 1984, 1986, and 1988. Her husband acquired two separate units in 1987. While Mr. Dhamoon combined his two units and received one stock certificate and one proprietary lease, these units were never combined with the appellant's units and she still holds four separate proprietary leases and stock certificates. Nor is there any evidence

in the record that a request was ever made, or granted, as to the "regrouping of space" or "reallocation of shares" that would result in all six units becoming one jointly-owned integrated space as would be required by article V, section 7 of the co-op bylaws.

While, the co-op corporation relies heavily on the fact that there is a door connecting appellant's medical office with her husband's fertility clinic, this fact alone is not dispositive of joint ownership. Property rights are not affected by any decision of neighboring owners to remove barriers to entry between their properties. Nor is it dispositive, contrary to the court's reasoning, that the appellant and her husband hold executive or directorial positions in each other's practices or that their respective practices may be owned by one corporation. None of these factors affecting the appellant's business are at all relevant to their separate ownership of their respective interests in real property.

Further, we find that it is particularly egregious for the court to have supported its determination of joint ownership by reference to purported judicial admissions of the appellant's husband in which he allegedly swore under oath that he owned the shares of all six units. Whether the appellant's husband was mistaken, or was lying, whether he even made the statement, or what he gained by making the statement is not a matter before this Court. The relevant determination is that the separate properties of husband and wife were not magically converted into one jointly-owned property without any conveyance in writing but merely by appellant's husband's statement, even if the statement was made under oath. (*See* General Obligations Law § 5-703.) In this case, the stock certificates and proprietary leases held separately by husband and wife trump any judicial admission.

Finally, it is a basic tenet of New York property law that property owned separately by two parties cannot be combined into a joint ownership on the order of an independent third party. Simply because the two parties involved are married does not change this principle. While property acquired separately during marriage may be combined and equitably distributed during a divorce proceeding (*Judson v Judson*, 255 AD2d 656 [1998]), there is no legal authority, nor has there been since the Married Women's Property Act of 1860, that would allow a third party to compel married parties to combine their separate properties into joint ownership during marriage. (*See* Domestic Relations

Law § 236 [B].) Thus, the co-op corporation has no authority to require that the appellant's patients utilize the street entrance of a separately-owned property, in the process creating an impermissible easement over that property.

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered May 16, 2006, insofar as it denied appellant's motion for a preliminary injunction, granted respondent's cross motion to dismiss the complaint and amended the caption, should be reversed, on the law, without costs, the complaint reinstated, appellant's motion for a preliminary injunction granted, respondent directed to serve an answer within 20 days of service of a copy of this order, and the original caption restored.

NARDELLI, J. (dissenting in part). I respectfully dissent to the extent that I find the order of the motion court should be modified, defendant's motion to dismiss the complaint denied, the complaint reinstated, defendant ordered to serve an answer, and the original caption restored. I would affirm that branch of the order which denied plaintiff's motion for a preliminary injunction.

Initially, I find no support for the majority's observation that the motion court's decision somehow stands for the premise that "merely because parties are married, property held separately becomes property held jointly for the benefit of an independent third party." Rather, the motion court's analysis focuses, in large part, on what it perceived as a deliberate attempt to deceive the court by the married parties and, in that vein, I cannot accept the majority's broad brush dismissal of the relevance of prior, contradictory judicial admissions made by plaintiff, and her husband, as well as other documentary evidence regarding the ownership and configuration of the same office space and corporate entities which are at the core of this matter.

This action arises out of a dispute which primarily concerns access to certain professional space in the building designated as 230 Central Park South, New York, New York. The building is owned by defendant 230 Park South Apartments, Inc., a cooperative corporation. Plaintiff Satwant K. Dhamoon is a medical doctor who owns the shares of stock appurtenant to the proprietary leases for apartments 1F, 1G, 2F and 2G; plaintiff's husband, Rajinder Dhamoon, owns the shares appurtenant to the proprietary leases for apartments 1D and 1E.

The amended Cooperative House Rules fueling this controversy provide, in pertinent part:

"2. No patient, visitor, vendor or invitee, or anyone accompanying such persons, of any doctor, dentist, or medical practitioner who has offices or facilities in the Building . . . shall be permitted to enter, traverse, sit, wait in or use the lobby area, public halls, elevator, hallways, or lobby doorway of the Building for access to such office or for any other reason whatsoever . . .

"6. No signage, notice or advertisement shall be inscribed or exposed on the Building, or on or at any window or door or any other part of the Building, without prior written approval by the Board."

Plaintiff maintains that she operates a gynecological/obstetrics practice in apartments 1F, 1G, 2F and 2G, whereas her husband manages a reproductive endocrinology practice, which is more commonly referred to as a fertility clinic, in apartments 1D and 1E. The fertility clinic is known as I.V.F. New York (IVFNY), which is managed by Central Park Medical Services (CPMS), an entity overseen by Rajinder.

Plaintiff currently claims that the only legal access to her office space is through a door located in the lobby of the building and that the enforcement of House Rule 2 "will completely deprive [her] of her ability to access and use her apartments to conduct her medical practice, since her patients . . . will have literally no ability to enter her offices." Plaintiff acknowledges that her offices can be accessed through the street entrance leading to the offices of IVFNY, but maintains that she has no proprietary right to access her premises in that manner.

Defendant, on the other hand, avers that the fertility clinic and the gynecology/obstetrics practice comprise a single, integrated office space and that the fertility clinic is not, as plaintiff claims, a separate, distinct entity from her medical practice.

Plaintiff commenced this action by the service of a summons and complaint, dated August 19, 2005, in which she seeks a declaration that House Rules 2 and 6 are invalid, and an injunction prohibiting and enjoining the enforcement of those rules. Plaintiff, shortly thereafter, moved, by order to show cause, for a preliminary injunction enjoining defendant's board from enforcing House Rules 2 and 6, and, in the course of making such motion, obtained a temporary restraining order, dated August 24, 2005, which enjoined defendant, pending the hearing of the motion, from restricting plaintiff's patients from entering the building's lobby.

Defendant, on or about October 19, 2005, served plaintiff with verified counterclaims alleging, among other things, that plaintiff had been subletting space in violation of her proprietary lease, and seeking an accounting. Defendant subsequently cross-moved for an order, pursuant to CPLR 3211 (a), dismissing the complaint for failure to state a cause of action, and on the basis of documentary evidence.

The motion court, by order entered May 16, 2006, denied plaintiff's motion for a preliminary injunction, finding no likelihood of success on the merits, and that a balance of the equities did not lie in plaintiff's favor. The motion court also found no irreparable harm because plaintiff's office and the fertility clinic comprised integrated office space which is accessible from the front entrance. In reaching that conclusion, the court relied on "prior inconsistent judicial statements" by plaintiff, as well as other documentary evidence (2006 NY Slip Op 30276[U], *4). Further, the motion court granted defendant's cross motion and dismissed the complaint, primarily on the basis of the business judgment rule. This appeal ensued.

A review of the record reveals a convoluted, contradictory trail of sworn statements made by plaintiff, and her husband, which seemingly meander at will, guided only by the particular argument they wish to advance at any given point along the way. Moreover, other documentary evidence further obfuscates the overall picture.

Rajinder, as the majority notes, claimed in a sworn statement, in a prior proceeding he had commenced to nullify a cooperative board election, that he owned all of the shares appurtenant to the units in question, a statement he later asserted was a mistake. If that statement were the only variance from plaintiff's present claims, I would tend to agree with the majority's conclusions. Plaintiff, however, in an affidavit submitted in this case, states, with regard to Rajinder's "separate and distinct" fertility clinic which purportedly operates out of apartments 1D and 1E:

> "All of the relief requested in the Defendant's papers *is predicated upon a big lie*, to wit, that the four units (1F, 1G, 2F and 2G) comprising my medical offices are combined with units 1D and 1E into a single premises. I own units 1F, 1G, 2F and 2G. I do not own units 1D and 1E. Those units are owned by my husband, Rajinder Dhamoon. *The units that I own are used for my medical practice. The units that*

*my husband owns are used for a fertility clinic. The business operations of the fertility clinic are separate and apart and distinct from my medical practice. They do not constitute one combined single business enterprise"* (emphasis added).

Unfortunately, in a high-visibility New York State Supreme Court case involving the mishandling of human eggs in which plaintiff, her husband, IVFNY and CPMS were named as defendants, plaintiff presented a dramatically different schematic of the office layout and corporate structure of IVFNY and CPMS. Plaintiff swore in an affidavit that:

"2. *I am and was the sole shareholder of Central Park Medical Services, P.C. (CPMS)*, which owns certain medical facilities located at 230 Central Park South in New York City.

"3. The facilities of Central Park Medical Services consist of my office and treatment rooms for my patients, other physician offices and treatment rooms which are rented out to independent physicians. *On the second floor are the facilities of IVFNY. My husband, Rajinder Dhamoon is and was the Office Manager of CPMS.* . . .

"7. The in vitro fertilization process is done by an embryologist. IVFNY contracted with IVF Center of New York for its embryological services. *For my IVF patients* and for the IVF patients of other independent physicians who rented IVFNY's facilities, all embryological services were performed by IVF Center of New York. Its President, Dr. Kenneth Lipetz was, in April, 1998, the Director of IVFNY's Embryology Laboratory" (emphasis added).

Defendants (Dr. and Rajinder Dhamoon, IVFNY and CPMS) moved for dismissal in that prior action and, through an attorney's affirmation, echoed Dr. Dhamoon's statements, asserting that Dr. Dhamoon is the sole shareholder of CPMS, and that CPMS's office at the building "consists of Dr. Dhamoon's office, treatment rooms for her own obstetrical and gynecological patients, office space and treatment rooms used by independent physicians who rent from CPMS and, *on the floor above, the facilities of IVFNY*" (emphasis added).

A brochure produced and distributed by IVFNY, which features a photograph of plaintiff as part of the medical team,

states, in two prominent locations, that IVFNY is doing business as CPMS, and that "[t]he entrance to our offices is from the Lobby on the ground floor," which, of course, is, according to plaintiff's current allegations, either impossible or extraordinarily inconvenient. Indeed, in support of her ex parte application for the temporary restraining order, plaintiff submitted an affidavit in which she swore that loss of use of the lobby entrance would "render[ ] it impossible for my patients to gain access *to my medical offices*, thereby depriving me of my livelihood" (emphasis added).* It must be borne in mind that in plaintiff's current version of office ingress/egress, physical layout and corporate structure, IVFNY operates out of Rajinder's apartments 1D and 1E, and not in the second floor apartments, as sworn to by plaintiff and Rajinder in a prior case; plaintiff's practice utilizes apartments 1F, 1G, 2F and 2G, and not just certain offices on the first floor, as previously sworn to by plaintiff; CPMS and IVFNY are controlled by Rajinder and operate out of his units, despite previous allegations by plaintiff that she is the sole shareholder of CPMS, and the brochure's statement that IVFNY does business as CPMS; and there is no access to her office other than through the lobby and, conversely, at least one would surmise, that there is no access to IVFNY's offices other than through the outside private entrance, notwithstanding IVFNY's brochure which identifies only one entrance to IVFNY, which is the lobby.

The doctrine of judicial estoppel, or the doctrine of inconsistent positions "precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed" (*Ford Motor Credit Co. v Colonial Funding Corp.*, 215 AD2d 435, 436 [1995]; *see also Gale P. Elston, P.C. v Dubois*, 18 AD3d 301, 303 [2005]), and is intended to prevent abuses of the judicial system by which a party is granted relief while maintaining one position, and later, in a different action, asserting a contrary position (*D & L Holdings v Goldman Co.*, 287 AD2d 65, 71-72 [2001], *lv denied* 97 NY2d 611 [2002]; *Environmental Concern v Larchwood Constr. Corp.*, 101 AD2d 591, 593 [1984]).

On the other hand, informal judicial admissions

"are recognized as 'facts incidentally admitted dur-

---

* "[I]mpossible" to gain access was later downgraded to inconvenient after the submission of opposition papers by defendant.

ing the trial or in some other judicial proceeding, as in statements made by a party as a witness, or contained in a deposition, a bill of particulars, or an affidavit' (Prince, Richardson on Evidence § 8-219, at 529 [Farrell 11th ed] [citations omitted]). 'A formal judicial admission in one action may become an admission in the evidentiary sense in another action, and would be classified as an *informal* judicial admission in the later action' (Richardson, *op. cit.*, at 530). To be sure, they are not conclusive, through they are 'evidence' of the fact or facts admitted (Richardson, *op. cit.*, at 530). Furthermore, '[a]n admission in a pleading in one action is admissible against the pleader in another suit, provided it is shown "by the signature of the party, or otherwise, that the facts were inserted with his knowledge, or under his direction, and with his sanction" ' (Richardson, *op. cit.*, at 530, quoting *Cook v Barr*, 44 NY 156, 158)." (*Matter of Union Indem. Ins. Co. of N.Y.*, 89 NY2d 94, 103 [1996]; *accord Koslowski v Koslowski*, 245 AD2d 266, 268 [1997], *lv dismissed in part and denied in part* 92 NY2d 835 [1998]).

Indeed, we have held that prior affidavits may be used to impeach credibility (*Baje Realty Corp. v Cutler*, 32 AD3d 307, 310 [2006]). Further, as noted by Justice Gonzalez of this Court in *Morgenthow & Latham v Bank of N.Y. Co.* (305 AD2d 74, 80 [2003], *lv denied* 100 NY2d 512 [2003]), we have, on several occasions, found that prior statements or averments of parties, or their agents, made during the course of a prior action or proceeding, that refute an essential element of a plaintiff's present claim, may constitute documentary evidence within the purview of CPLR 3211 (a) (1).

In evaluating a motion brought pursuant to CPLR 3211, the court, generally, will "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see also Nonnon v City of New York*, 9 NY3d 825, 827 [2007]). The court, however, is not required to accept factual allegations, or accord plaintiff favorable inferences, in those cases where the factual assertions are plainly contradicted by documentary evidence (*Bishop v Maurer*, 33 AD3d 497, 498 [2006], *affd* 9 NY3d 910 [2007]; *Robinson v Robinson*, 303 AD2d 234, 235 [2003]).

In this matter, I find, with some reservations, that the prior statements of plaintiff and her attorney consist of informal judicial admissions which, coupled with the remaining documentary evidence, including the brochure, diagrams of the floor plans of the units, and numerous photographs, present issues of fact which do not, conclusively, contradict the allegations set forth in the complaint, thus precluding dismissal of the complaint at this juncture.

I do, however, agree with the motion court that a preliminary injunction in plaintiff's favor is not warranted. It is well established that a party seeking a preliminary injunction must demonstrate: the likelihood of success on the merits; the prospect of irreparable injury if the injunction is not issued; and a balance of the equities in the movant's favor (CPLR 6301; *Casita, L.P. v MapleWood Equity Partners [Offshore] Ltd.*, 43 AD3d 260 [2007]; *U.S. Re Cos., Inc. v Scheerer*, 41 AD3d 152, 154 [2007]). In addition, while mere issues of fact will not preclude a preliminary injunction, sharp factual issues, which obscure the likelihood of success, will bar the remedy (*Eklund v Pinkey*, 31 AD3d 908, 909 [2006]; *Pearlgreen Corp. v Yau Chi Chu*, 8 AD3d 460, 461 [2004]).

Here, given the numerous material issues of fact presented in the record, and delineated above, I find injunctive relief is unavailable to plaintiff.

SULLIVAN, J.P., BUCKLEY and KAVANAGH, JJ., concur with CATTERSON, J.; NARDELLI, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered May 16, 2006, reversed, on the law, without costs, the complaint reinstated, appellant's motion for a preliminary injunction granted, respondent directed to serve an answer within 20 days of service of a copy of this order, and the original caption restored.