[23 NYS3d 446]

In the Matter of VERIZON NEW YORK, INC., Respondent, v NEW YORK STATE PUBLIC SERVICE COMMISSION et al., Appellants.

Third Department, January 14, 2016

**APPEARANCES OF COUNSEL**

*Kimberly A. Harriman, Public Service Commission*, Albany (*Jonathan D. Feinberg* of counsel), for appellants.

*Greenberg Trauring, LLP*, Albany (*Henry M. Greenberg* of counsel), for respondent.

*Richard Brodsky*, White Plains, for Common Cause and others, amici curiae.

*Holwell Shuster & Goldberg, LLP*, New York City (*Daniel M. Sullivan* of counsel), for United States Chamber of Commerce and another, amici curiae.

### OPINION OF THE COURT

ROSE, J.

Appeal from a judgment of the Supreme Court (Ferreira, J.), entered August 6, 2014 in Albany County, which partially granted petitioner's application, in a proceeding pursuant to CPLR article 78, to, among other things, annul a determination of respondent Secretary of the Public Service Commission concerning the disclosure of certain documents pursuant to the Freedom of Information Law.

As part of a regulatory proceeding in connection with petitioner's proposal to replace one of its wireline telephone and Internet communications networks with a fully wireless network known as Verizon Voice Link, petitioner submitted

various documents to respondent Department of Public Service and formally requested that certain of those documents not be publicly disclosed on the ground that they constitute trade secret material pursuant to Public Officers Law § 87 (2) (d) and, thus, are exempt from disclosure under the Freedom of Information Law (*see* Public Officers Law art 6 [hereinafter FOIL]).

In response to a FOIL request by a third party seeking release of certain of the documents containing petitioner's costs of implementing Verizon Voice Link and its methods and procedures (hereinafter M&P) for marketing and operating the new service, respondent Records Access Officer for the Department determined that 10 of 13 requested documents containing M&P information did not constitute trade secret material and, while the three remaining M&P documents and an additional document containing cost information "fit[ ] within the definition of trade secret," they were not entitled to the FOIL exemption provided by Public Officers Law § 87 (2) (d) due to petitioner's failure to sufficiently show that disclosing the documents would cause a likelihood of substantial injury to its competitive position. Upon petitioner's administrative appeal, respondent Secretary of the Public Service Commission upheld the Record Access Officer's determination. Petitioner then commenced this CPLR article 78 proceeding seeking, among other things, reversal of the Secretary's determination. Supreme Court, in a thorough and well-reasoned decision, partially granted the petition, finding that all but three of the documents at issue constitute bona fide trade secrets and are exempt from FOIL disclosure regardless of whether a likelihood of substantial competitive injury was shown. Respondents now appeal, and we affirm.

As pertinent here, Public Officers Law § 87 (2) (d) protects from FOIL disclosure "all records" that "are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise." Respondents argue that this language unambiguously indicates that the Legislature intended to create a single FOIL exemption for all types of confidential commercial information imparted to an agency—including trade secrets—and to subject all such information to the same showing of substantial competitive injury. Inasmuch as the question presented is one of pure statu-

tory reading and analysis, "the [J]udiciary need not accord any deference to the agency's determination, and [we are] free to ascertain the proper interpretation from the statutory language and legislative intent" (*Matter of Belmonte v Snashall*, 2 NY3d 560, 566 [2004] [internal quotation marks and citation omitted]; *see Matter of LaCroix v Syracuse Exec. Air Serv., Inc.*, 8 NY3d 348, 352 [2007]). In doing so, we consider the plain meaning of the statutory text itself, as it is "the best evidence of legislative intent" (*Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 3 NY3d 563, 568 [2004]; *see County of Broome v Badger*, 55 AD3d 1191, 1193 [2008]).

To begin, respondents' reading of Public Officers Law § 87 (2) (d) renders superfluous the term "trade secrets" and, thus, fails to give "effect and meaning . . . to the entire statute and every part and word thereof" (McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]; *accord Sanders v Winship*, 57 NY2d 391, 396 [1982]; *see Matter of Lewis Family Farm, Inc. v New York State Adirondack Park Agency*, 64 AD3d 1009, 1014 [2009]). In our view, if the Legislature truly intended to subject all types of confidential commercial information submitted to an agency to the same evidentiary burden for FOIL exemption purposes, there would be no need for the statutory language that expressly singles out trade secrets for protection. Respondents' reading is also linguistically awkward in its treatment of the words "subject enterprise" in the qualifying phrase. These words most naturally refer back to the immediately preceding use of the term "commercial enterprise" to describe the entities sharing confidential commercial information with an agency (*see e.g. People v Shulman*, 6 NY3d 1, 34 [2005]). Respondents' construction, however, would link the words "subject enterprise" to the more syntactically remote term "trade secrets," despite the lack of a comma to indicate that it was intended to refer to all of the categories of confidential commercial information (*compare A.J. Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574, 581 [1996]). Moreover, the term "trade secrets" refers to a type of information, rather than the entity attempting to protect it—i.e., a commercial enterprise (*see People v Shulman*, 6 NY3d at 33-34; *cf. Redcross v Aetna Cas. & Sur. Co.*, 146 AD2d 125, 127 [1989]; *Connors v Hartford Fire Ins. Co.*, 138 AD2d 877, 878-879 [1988]). Accordingly, we agree with Supreme Court that the plain language of Public Officers Law § 87 (2) (d) confirms that the Legislature intended to create two separate FOIL exemptions in the same statutory

provision, one that exempts all records proven to be bona fide trade secrets, and another that requires a showing of substantial competitive injury in order to exempt from FOIL discovery all other types of confidential commercial information imparted to an agency.

Supreme Court's interpretation is further confirmed by the legislative history of the statutory provision. Before Public Officers Law § 87 (2) (d) was amended to its present form in 1990, the provision, as originally enacted in 1977, provided that an agency may deny access to records that are "trade secrets or are maintained for the regulation of commercial enterprise which if disclosed would cause substantial injury to the competitive position of the subject enterprise" (L 1977, ch 933). As Supreme Court correctly observed, this language clearly expresses the Legislature's view that, from its inception, Public Officers Law § 87 (2) (d) was meant to require a showing of substantial competitive injury only when a party seeks a FOIL exemption for non-trade secret commercial records. Of particular note is the repetition of the verb "to be"—conjugated as "are"—before and after the disjunctive conjunction "or," which indicates that "trade secrets" and records "maintained for the regulation of commercial enterprise which if disclosed would cause substantial injury to the competitive position of the subject enterprise" were to be viewed as two independent and distinct categories of exempt records (see Matter of Somers v Demco, 26 AD3d 621, 622-623 [2006], affd 8 NY3d 831 [2007]; Matter of DaimlerChrysler Corp. v Spitzer, 26 AD3d 88, 91-92 [2005], affd 7 NY3d 653 [2006]; see also McKinney's Cons Laws of NY, Book 1, Statutes § 235).

The 1990 amendment to Public Officers Law § 87 (2) (d) did not remove the distinction between the two categories of exempt commercial records. The intent of the amendment was merely to broaden the second category of records "which if disclosed would cause substantial injury to the competitive position of an enterprise" by including records that are not specifically "maintained by an agency for the purpose of regulating a commercial enterprise" (Mem of Dept of Economic Development, Bill Jacket, L 1990, ch 289 at 18).[1] Nowhere in the legislative history of the 1990 amendment is there any

---

1. The 1990 amendment altered Public Officers Law § 87 (2), such that it now exempts records that "are trade secrets or are [maintained for the regulation of] *submitted to an agency by a commercial enterprise or derived from information obtained from a* commercial enterprise *and* which if disclosed

indication that bona fide trade secrets were, or would be, subject to a separate showing of substantial competitive injury in order to be exempted from FOIL disclosure. Indeed, it was unnecessary for the Legislature to create such an additional evidentiary hurdle, as the policy behind Public Officers Law § 87 (2) (d) is simply "to protect businesses from the deleterious consequences of disclosing confidential commercial information, so as to further the State's economic development efforts and attract business to New York" (*Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 NY2d 410, 420 [1995]; *see* Mem of Dept of Economic Development, Bill Jacket, L 1990, ch 289 at 19).

Respondents' alternate reading of the legislative history is unpersuasive. First, respondents counter that the then-Attorney General's memorandum in support of the amendment "explicitly stated" that the exemption of trade secrets is subject to a showing of substantial competitive injury. However, the portion of the memorandum that respondents cite in support of their assertion is merely a capsule summary of the prior iteration of Public Officers Law § 87 (2) (d) containing no citations or formal statutory analysis (*see* Mem of Dept of Law, Bill Jacket, L 1990, ch 289 at 16). Elsewhere in the memorandum, the Attorney General expressly recognizes the distinction between the two FOIL exemptions created by the provision, stating that "many records [his] office receives are not 'trade secrets,' and are therefore not exempt under current law. The other exemption—'maintained for the regulation' of business—is not applicable, as the Attorney General's office does not regulate business" (Mem of Dept of Law, Bill Jacket, L 1990, ch 289 at 17).

Respondents also cite the 1990 memorandum of Robert J. Freeman, who was then, and is now, the Executive Director of the Committee on Open Government (hereinafter COG). In the memorandum, Freeman states COG's position that the standard for exemption is not based upon the type of record at issue, but "is based upon the effect of disclosure, for the authority to withhold is restricted to those situations in which disclosure would cause substantial injury to the competitive position of a commercial enterprise" (Mem of Comm on Open Govt, Bill Jacket, L 1990, ch 289 at 15). We decline, however,

---

would cause substantial injury to the competitive position of the subject enterprise" (L 1990, ch 289, § 1 [former language in brackets; new language italicized]).

to view this interpretation of the statutory language by an administrative committee as a definitive statement of legislative intent.

Similarly unpersuasive is COG's 2014 advisory opinion on the proper interpretation of Public Officers Law § 87 (2) (d) (*see* Comm on Open Govt FOIL-AO-19221 [2014]), which was issued following Supreme Court's decision in this case at the request of the third party that initially sought the disclosure here. In the advisory opinion, Freeman reiterated COG's position in the 1990 memorandum that the provision does not allow trade secrets to be exempted from FOIL discovery without a showing of substantial competitive injury. While historically consistent, we find COG's interpretation of the statute to be based upon flawed reasoning and analysis, and, as with the 1990 memorandum, we decline respondents' invitation to adopt COG's interpretation as our own (*see Matter of John P. v Whalen*, 54 NY2d 89, 96 [1981]; *Matter of Hayes v Chestertown Volunteer Fire Co., Inc.*, 93 AD3d 1117, 1121 n 2 [2012]).

Respondents also argue that prior case law applying Public Officers Law § 87 (2) (d) is more supportive of their interpretation that FOIL exemption requests for proven trade secrets must also be subject to a separate showing of substantial competitive injury. Again, we must disagree. Our courts have long recognized "[t]he importance of trade secret protection and the resultant public benefit" (*Matter of New York Tel. Co. v Public Serv. Commn.*, 56 NY2d 213, 219 [1982]; *see Curtis v Complete Foam Insulation Corp.*, 116 AD2d 907, 909 [1986]), and have developed a fact-intensive inquiry to determine whether specific commercial information is a bona fide trade secret worthy of such protection. First, it must be established that the information in question is a " 'formula, pattern, device or compilation of information which is used in one's business, and which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it' " (*Matter of New York Tel. Co. v Public Serv. Commn.*, 56 NY2d at 219 n 3, quoting Restatement of Torts § 757, Comment *b*; *accord Ashland Mgt. v Janien*, 82 NY2d 395, 407 [1993]; *Marietta Corp. v Fairhurst*, 301 AD2d 734, 738 [2003]). Second, if the information fits this general definition, then an additional factual determination must be made

> "concerning whether the alleged trade secret is truly secret by considering: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees

and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others" (*Marietta Corp. v Fairhurst*, 301 AD2d at 738 [internal quotation marks, brackets and citation omitted]).

Inasmuch as an entity seeking to establish the existence of a bona fide trade secret must make a sufficient showing with respect to each of these factors, we agree with Supreme Court that it is wholly unnecessary and overly burdensome to require the entity to then make a separate showing that FOIL disclosure of the trade secret would cause substantial injury to its competitive position.

Nonetheless, respondents claim that the leading cases of *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale* (87 NY2d at 419-421) and *Matter of Markowitz v Serio* (11 NY3d 43, 48-51 [2008]) do not differentiate between trade secrets and other confidential commercial information, and that they treat Public Officers Law § 87 (2) (d) as a single FOIL exemption governed by a single evidentiary standard. However, in neither of those cases did the Court of Appeals specifically address whether the information sought constituted trade secret material. Nor was it necessary for the Court to do so, as the information in question—i.e., a list of auto insurance policies sold in Kings County by zip code, and a university's fall semester booklist compiled by a bookseller—could not be said to be "truly secret" information worthy of protection from disclosure without a showing of substantial competitive injury (*Marietta Corp. v Fairhurst*, 301 AD2d at 738-739; *see Ashland Mgt. v Janien*, 82 NY2d at 407-408).

Respondents also argue that we have applied the substantial competitive injury standard to both categories of confidential commercial records without differentiating between them. However, as with their analysis of the Court of Appeals' holdings, respondents ignore the fact that the cases they cite in support of their assertion either dealt with information that likely would not constitute bona fide trade secret material under the *Ashland Mgt.* standard (*see e.g. Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp.*, 277 AD2d 782,

784-786 [2000], *lv denied* 96 NY2d 708 [2001]), or simply applied the substantial competitive injury standard because the argument that the information was exempt exclusively because of its status as a trade secret was not raised as an issue in the case (*see e.g. Matter of City of Schenectady v O'Keeffe*, 50 AD3d 1384, 1386 [2008], *lv denied* 11 NY3d 702 [2008]; *Matter of Glens Falls Newspapers v Counties of Warren & Washington Indus. Dev. Agency*, 257 AD2d 948, 949-950 [1999]; *Matter of New York State Elec. & Gas Corp. v New York State Energy Planning Bd.*, 221 AD2d 121, 124-125 [1996]).[2] Significantly, when the two exemptions contained in Public Officers Law § 87 (2) (d) have been separately argued, we have had no trouble utilizing a two-part inquiry, which first addresses whether the information at issue is entitled to the trade secret exemption, and, upon answering that question in the negative, proceeds to analyze the information under the substantial competitive injury standard (*see Matter of Sunset Energy Fleet v New York State Dept. of Envtl. Conservation*, 285 AD2d 865, 866-868 [2001]; *see also Marietta Corp. v Fairhurst*, 301 AD2d at 738-739).

Turning to the merits of the petition, for the reasons set forth by Supreme Court, we agree that petitioner has established that all of the documents at issue on appeal contain bona fide trade secrets and, by virtue of that status, "fall[ ] squarely within the ambit of one of [the] statutory exemptions" provided by Public Officers Law § 87 (2) (d) (*Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 NY2d at 421 [internal quotation marks and citation omitted]; *accord Matter of Sunset Energy Fleet v New York State Dept. of Envtl. Conservation*, 285 AD2d at 866).

In light of our decision, respondents' remaining arguments have been rendered academic.

McCARTHY, J.P., EGAN JR., LYNCH and CLARK, JJ., concur.

Ordered that the judgment is affirmed, without costs.

---

2. We note that, in *Matter of City of Schenectady v O'Keeffe* (*supra*), we concluded that the data in question was properly accorded trade secret status because the evidence satisfied the substantial competitive injury standard (*id.* at 1386-1387). However, there, the parties did not attempt to argue, as petitioner does here, that Public Officers Law § 87 (2) (d) exempts bona fide trade secrets from FOIL disclosure without an additional showing of substantial competitive injury. To the extent that it can be read to require such a showing, it is not to be followed.